ARLEN, APPELLEE, *v.* STATE OF OHIO,
STATE MEDICAL BOARD, APPELLANT.

[Cite as Arlen v. State (1980), 61 Ohio St. 2d 168.]

(No. 79-363—Decided February 6, 1980.)

170

*Messrs. Yelsky, Singer & Lonardo* and *Mr. Leonard W. Yelsky,* for appellee.

*Mr. William J. Brown,* attorney general, and *Mr. B. Douglas Anderson,* for appellant.

LOCHER, J. Appellant asserts two propositions of law that involve the application of R. C. 4731.22 and certain sections of the AMA Code of Ethics.

R. C. 4731.22 states, in pertinent part:

"(B) The [state medical] board shall, to the extent permitted by law, limit, reprimand, revoke, suspend, place on probation, refuse to register, or reinstate a certificate for one or more of the following reasons:

" * * *

"(2) Failure to use reasonable care discrimination in the administration of drugs, or failure to employ acceptable scientific methods in the selection of drugs or other modalities for treatment of disease;

" * * *

"(6) A departure from, or the failure to conform to, minimal standards of care of similar practitioners under the

same or similar circumstances, whether or not actual injury to a patient is established;

"* * *

"(8) Knowingly maintaining a professional connection or association with a person who is in violation of this chapter or rules of the board or with a person who knowingly aids, assists, procures or advises an unlicensed person to practice medicine contrary to this chapter or rules of the board;

"* * *

"(15) The violation of any provision of a code of ethics of a national professional organization as specified in this division. 'National professional organization' means the American medical association, the American osteopathic association, the American podiatry association, the American physical therapy association, and such other national professional organizations as are determined, by rule, by the state medical board. The state medical board shall obtain and keep on file current copies of the codes of ethics of the various national professional organizations. The practitioner whose certificate is being suspended or revoked shall not be found guilty of the violation of a code of ethics of an organization not appropriate to his profession."

Section 4 of the AMA Code of Ethics provides as follows:

"The medical profession should safeguard the public and itself against physicians deficient in moral character or professional competence. Physicians should observe all laws, uphold the dignity and honor of the profession and accept its self-imposed disciplines. They should expose, without hesitation, illegal or unethical conduct of fellow members of the profession."

Section 7 of the AMA Code of Ethics provides that:

"In the practice of medicine a physician should limit the source of his professional income to medical services actually rendered by him, or under his supervision, to his patients. His fee should be commensurate with the services rendered and the patient's ability to pay. He should neither pay nor receive a commission for referral of patients. Drugs, remedies or appliances may be dispensed or supplied by the physician provided it is in the best interests of the patient."

## I.

In its first proposition of law, appellant asserts that an administrative licensing board in a disciplinary action may rely on its own expertise in deciding whether a standard of practice has been met.

The appellate court determined that the order of the State Medical Board suspending Dr. Arlen's license must be reversed because of the absence of an expert opinion acknowledging that Dr. Arlen failed to use "reasonable care discrimination in the administration of drugs," as provided in R. C. 4731.22(B)(2).

For the reasons hereinafter set forth, expert testimony as to a standard of practice is not mandatory in a license revocation hearing and the board may rely on its own expertise to determine whether a physician failed to conform to minimum standards of care.

Dr. Arlen was charged with the "[f]ailure to use reasonable care" and a "departure from, or failure to conform to, minimal standards of care," as espoused in R. C. 4731.22(B)(2) and (6), respectively.

R. C. 4731.22 specifies the grounds for revoking, suspending, reprimanding and refusing a license for the practice of medicine in order to maintain a criterion or minimum standard appropriate for the profession.

Similar to the reasonably prudent man standard of tort law, a physician, who is regulated under the mandates of R. C. 4731.22, must "use reasonable care" and "conform" to "minimal standards of care of similar practitioners under the same or similar circumstances."

In a tort action, a jury is given the delicate task of weighing and considering evidence and determining whether an individual has acted within the purview of a "reasonably prudent man." In tort actions, the trier of facts has knowledge or experience of common occurrences and determines whether certain acts fall below the statutory standard.

A medical disciplinary proceeding, such as in the instant cause, is a special statutory proceeding which purports to maintain sound professional conduct. The licensing board, which is comprised of individuals fitted by training and ex-

pertise to perform the duties imposed upon it, weighs and considers whether a certain act is one of "reasonable care discrimination" or a departure from the "minimal standards of care" within the medical profession.

The need for expert medical testimony is quite evident when the trier of facts is confronted with issues that require scientific or specialized knowledge or experience beyond the scope of common occurrences. However, the need for expert opinion testimony is negated where the trier of facts, such as in the instant cause, is possessed of appropriate expertise and is capable of drawing its own conclusions and inferences.

It is provided in R. C. 4731.01 that the State Medical Board consist of ten members, eight of whom shall be physicians and surgeons licensed to practice in Ohio, seven of whom must hold the degree of doctor of medicine, one the degree of doctor of podiatric medicine, and one the degree of doctor of osteopathy. The board members are selected by the Governor, with the advice and consent of the Senate. This distinguished medical board is capable of interpreting technical requirements of the medical field and is quite capable of determining when certain conduct falls below a reasonable standard of medical care.

In discussing the legislative intent for the existence of such board, this court, in *Farrand* v. *State Medical Board* (1949), 151 Ohio St. 222, at page 224, stated:

"***The purpose of the General Assembly in providing for administrative hearings in particular fields was to facilitate such matters by placing the decision on facts with boards or commissions composed of men equipped with the necessary knowledge and experience pertaining to a particular field.***"

The Connecticut Supreme Court of Errors, in *Jaffe* v. *State Department of Health* (1949), 135 Conn. 339, 64 A. 2d 330, addressed the same issue as in the case at bar. In discussing the need for expert opinion for such a specialized board, such as in the instant cause, that court stated, at pages 349-350:

"***Expert opinions of other physicians offered before it could have been disregarded by it, and from a practical standpoint would in all probability have little, if any, effect in

bringing it to a decision at variance with its own conclusion upon the question whether or not the conduct of a practitioner had been compatible with professional standards or whether or not he was competent. With the facts of that conduct before it, the board was competent to determine such questions without hearing expert opinion evidence. It is true that where, in cases tried in court, an issue presented is such that its solution can only be reached upon the basis of the special knowledge of expert witnesses, such evidence must be produced.***That rule, however, supports rather than contravenes our conclusion in this case because it is based on the fact that such a question goes beyond the field of the ordinary knowledge and experience of judges or jurors;***and this is illustrated by our decisions holding that where an issue can be determined by the application of such knowledge expert testimony is not required.***"

Finding the above rationale proper, we determine that the State Medical Board is competent to determine whether a physician has failed to conform to a minimum standard of care.

The requirement for expert testimony in the record of a license revocation proceeding usurps the power of the State Medical Board's broad measure of discretion. The very purpose for having such a specialized technical board would be negated by mandating that expert testimony be presented. Expert opinion testimony can be presented in a medical board proceeding, but the board is not required to reach the same conclusion as the expert witness. The weight to be given to such expert opinion testimony depends upon the board's estimate as to the propriety and reasonableness, but such testimony is not binding upon such an experienced and professional board.

In conformity with the foregoing, the determination of the Court of Appeals is reversed. The appellant's first proposition of law is meritorious.

## II.

Appellant, in its second proposition of law, asserts that the court below erred in determining that the medical board's disciplinary ruling was not based on reliable, probative and substantial evidence.

In light of our discussion of proposition of law No. 1, coupled with the ensuing discussion, appellant's second proposition of law is also meritorious.

Initially, it is noted that a court reviewing a decision of the State Medical Board is confronted with the issue of whether the decision is against the manifest weight of the evidence and *not* whether the board abused its discretion. *Shearer* v. *State Medical Board* (1950), 91 Ohio App. 277, 281-282.

The authority of a Court of Common Pleas to review an order of an administrative agency under R. C. 119.12 is limited to a decision as to whether the order is supported by reliable, probative and substantial evidence and in accordance with law. *Department of Liquor Control* v. *Santucci* (1969), 17 Ohio St. 2d 69; *Doelker* v. *Accountancy Bd.* (1969), 12 Ohio St. 2d 76. A disciplinary action of the State Medical Board is under the restrictions of R. C. Chapter 119, and, therefore, the above test is applied.

Additionally, it is noted that a party's testimony of facts subversive to his interests is alone sufficient to support a verdict. *Gastauer* v. *Taxicabs of Cincinnati, Inc.* (1957), 103 Ohio App. 511; *Somerset* v. *Stinson* (1955), 74 Ohio Law Abs. 510.

A perusal of the facts indicates that Dr. Arlen admitted by stipulation that he issued prescriptions for Schedule II narcotics at a time when he did not possess a DEA Schedule II certificate. Additionally, Dr. Arlen, at the administrative proceeding, admitted writing prescriptions for Dilaudid, a Schedule II narcotic, in the name of Jablonski when the narcotics were actually intended for use by other individuals. Dr. Herbert Weiss, Dr. Arlen's expert witness, testified as to the appropriateness of maintaining drug addicts on narcotics due to the severe effect of abrupt withdrawal. But, Dr. Weiss did agree that Dr. Arlen's action in maintaining persons addicted to opiates is not the customary manner in which to handle such addiction problems.

In addition to the above admissions and testimony, R. C. 3719.06 prohibits the practice of writing prescriptions in the name of one individual when the narcotics are actually in-

tended for others. R. C. 3719.06(A) provides, in pertinent part:

"A practitioner licensed to prescribe, dispense, and administer controlled substances to a human being in the course of his professional practice may prescribe schedule II controlled substances by a written prescription***. Each written prescription***shall bear the full name and address of the person for whom the controlled substance is prescribed***."

Judge Pryatel, in his dissenting opinion in the court below, succinctly, but aptly, noted that:

"***I cannot accept, and will not condone, his [Dr. Arlen's] issuing prescriptions to the name of a drug counselor from the center who decided when, where and how much of the drug would be given and to whom. *For all practical purposes, Dr. Arlen became the pharmacist, and Jablonski, the administering physician.*" (Emphasis added.)

The Court of Appeals incorrectly ruled that the State Medical Board had no evidence in the record to support a decision that Dr. Arlen's conduct deviated from a medical standard of reasonable care. That court, in determining the need for expert opinion testimony in the record to support the board's finding, failed to note that the record is replete with Dr. Arlen's admissions that he did not have a DEA certificate for Schedule II narcotics at a time when he was writing prescriptions for Schedule II narcotics and that he wrote prescriptions in the name of Jablonski when he intended the use of the narcotics by others. Certainly, such admissions, coupled with Dr. Weiss' opinions concerning the propriety of certain actions taken by Dr. Arlen, can be considered reliable, probative and substantial evidence.

In view of the foregoing, this court concurs in the order of the State Medical Board. Accordingly, the judgment of the Court of Appeals is, therefore, reversed.

*Judgment reversed.*

W. BROWN, P. BROWN and HOLMES, JJ., concur.

CELEBREZZE, C. J., HERBERT and SWEENEY, JJ., concur in the judgment only.

HERBERT, J., concurring. I concur in the judgment because appellee's own statements establish his violation of the law. It is not necessary to a resolution of this cause to decide the question concerning expert testimony.