MANTHEY, APPELLEE, *v.* OHIO STATE MEDICAL BOARD, APPELLANT.

(No. 3-85-3 — Decided
March 19, 1987.)

*Joseph S. Gill, Moulton, Rick-secker, Wagner & Hoover* and *John L. Wagner,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Mary Joseph Maxwell,* for appellant.

MILLER, J. This is an appeal by the Ohio State Medical Board (hereinafter the "board') from a judgment of the Court of Common Pleas of Crawford County, which court, on appeal, reversed the order of the board which suspended the license of William C. Manthey, M.D. to practice medicine and his Drug Enforcement Administration permit, and required Manthey to sit for and pass the Clinical Competency portion of the "FLEX" (Federal Licensing Examination).

Dr. Manthey was served with a notice that the board intended to determine under the provisions of R.C. 4731.22 whether or not to limit, reprimand, revoke, suspend, place on probation, refuse to register, or reinstate his certificate to practice medicine or surgery. The acts set forth in the notice were alleged to be in violation of R.C. 4731.22(B)(2), (B)(3) and (B)(6).

R.C. 4731.22, as effective herein (139 Ohio Laws, Part I, 2401, 2410-2411), provided as pertinent to this appeal as follows:

"(B) The board, by a vote of not less than six members, shall, to the extent permitted by law, limit, revoke, or suspend a certificate, refuse to register or refuse to reinstate an applicant, or reprimand or place on probation the holder of a certificate for one or more of the following reasons:

"* * *

"(2) Failure to use reasonable care discrimination in the administration of drugs, or failure to employ acceptable scientific methods in the selection of drugs or other modalities for treatment of disease;

"(3) Selling, prescribing, giving away, or administering drugs for other than legal and legitimate therapeutic purposes or conviction of violation of any federal or state law regulating the possession, distribution, or use of any drug;

"* * *

"(6) A departure from, or the failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances, whether or not actual injury to a patient is established[.]"

The matter was heard by a member of the board acting as hearing officer. The board subpoenaed and submitted as evidence "all patient records for the 125 patients designated by a double asterisk (**) in the * * * letter issued * * *." Also presented was the testimony of Dr. Manthey and that of two expert witnesses, one called on behalf of the board and one called on behalf of Dr. Manthey.

At the conclusion of the hearing, the hearing officer made his report and recommendations, finding in the report that no evidence was presented to establish a violation of R.C. 4731.22(B)(3), but that there were violations of R.C. 4731.22(B)(2) and (B)(6). The hearing officer's report and recommendations were amended by the board which then issued its order as follows:

"1. Dr. William C. Manthey's license to practice medicine or surgery in Ohio shall be suspended for one

year. All but thirty days of the suspension shall be stayed provided that he complies with paragraph #2 of this Order.

"2. Dr. William C. Manthey shall surrender his Drug Enforcement Administration (DEA) permit for a period of not less than one year, after which time he must receive the Board's approval to reapply for his DEA permit.

"3. Dr. William C. Manthey shall appear before the State Medical Board or its agent four months from the effective date of this Order and, thereafter, as the Board determines.

"4. Dr. William C. Manthey shall sit for the Clinical Competency portion of the *FLEX* examination in June of 1984 or December, 1984. If he does not pass the examination, his license to practice medicine or surgery in Ohio shall be suspended until he repeats the test and passes it.

"* * *"

The board sets forth four assignments of error in its appeal. We will consider these assignments in a different order than set forth by the board.

Assignment of Error No. Two:

"The lower court erred in ruling that the board could not consider patient records which had been produced in conjunction with an alleged violation of R.C. Sec. 4731.22(B)(3) when no such violation was ultimately found."

Assignment of Error No. Three:

"The lower court erred in concluding that the list of patients and prescriptions attached to the board's original citation letter was not admissible *in toto*."

R.C. 4731.22(D)(1), as herein effective (139 Ohio Laws, Part I, 2401, 2413), provided in pertinent part:

"The board shall conduct all investigations and proceedings in such a manner as to protect patient confidentiality. The board shall obtain the consent of the patient in the form of a written release signed by the patient or by an authorized representative of the patient before seeking access to medical record information concerning a patient for the purpose of any investigation or hearing, except that no such consent is required if there is reason to believe that there has been a violation of division (B)(3) of section 4731.22 of the Revised Code. * * *"

The above language first appeared as a part of R.C. 4731.22, effective August 27, 1982 (139 Ohio Laws, Part I, 2401, 2410-2414). We have been referred to no cases which have interpreted that particular portion of the section nor do we find any such cases. However, a reading of the section indicates that written consent of the patient is dispensed with only where there is reason to believe that there has been a violation of R.C. 4731.22(B)(3).

To permit access to patients' records where there is reason to believe that R.C. 4731.22(B)(3) has been violated, but permit them to be used to prove other violations regardless of the outcome of the (B)(3) violation, would appear to violate the terms of the statute as it provides for the protection of patient confidentiality.

We conclude that the seeking of access to a patient's records without his consent is limited to violations of R.C. 4731.22(B)(3) and, as to all other violations of R.C. 4731.22, consent must first be obtained before access to such records can be effected.

The board contends that Dr. Manthey consented to the use of the records and/or waived the right to question their use by failing to object at the hearing before the board. However, it is the patients' confidentiality that is protected and the physician can neither consent to access without consent nor waive admission at the hearing.

We find the second and third assignments of error not to be well-taken and conclude that, in the absence of the evidence obtained from the patients' records, the board's order is not supported by reliable, probative and substantial evidence. The trial court's judgment of reversal must be affirmed for the above reasons.

However, App. R. 12(A) mandates that we pass upon the remaining two assignments of error.

Assignment of Error No. One:

"The lower court erred in concluding that the hearing member and the board could not rely upon their own expertise in reaching a decision on whether appellant had violated the medical practices Act."

The syllabus of *Arlen* v. *State* (1980), 61 Ohio St. 2d 168, 15 O.O. 3d 190, 399 N.E. 2d 1251, states:

"Expert testimony as to a standard of practice is not mandatory in a medical disciplinary proceeding to determine whether a physician's conduct falls below a reasonable standard of medical care."

At 61 Ohio St. 2d at 173-174, 15 O.O. 3d at 193-194, 399 N.E. 2d at 1254-1255, Justice Locher, writing for a majority of four members of the court, stated:

"In discussing the legislative intent for the existence of such board, this court, in *Farrand* v. *State Medical Board* (1949), 151 Ohio St. 222, at page 224, stated:

" '* * * The purpose of the General Assembly in providing for administrative hearings in particular fields was to facilitate such matters by placing the decision on facts with boards or commissions composed of men equipped with the necessary knowledge and experience pertaining to a particular field. * * *'

"The Connecticut Supreme Court of Errors, in *Jaffe* v. *State Department of Health* (1949), 135 Conn. 339, 64 A. 2d 330, addressed the same issue as in the case at bar. In discussing the need for expert opinion for such a specialized board, such as in the instant cause, that court stated, at pages 349-350:

" '* * * Expert opinions of other physicians offered before it could have been disregarded by it, and from a practical standpoint would in all probability have little, if any, effect in bringing it to a decision at variance with its own conclusion upon the question whether or not the conduct of a practitioner had been compatible with professional standards or whether or not he was competent. With the facts of that conduct before it, the board was competent to determine such questions without hearing expert opinion evidence. It is true that where, in cases tried in court, an issue presented is such that its solution can only be reached upon the basis of the special knowledge of expert witnesses, such evidence must be produced. * * * That rule, however, supports rather than contravenes our conclusion in this case because it is based on the fact that such a question goes beyond the field of the ordinary knowledge and experience of judges or jurors; * * * and this is illustrated by our decisions holding that where an issue can be determined by the application of such knowledge expert testimony is not required. * * *'

"Finding the above rationale proper, we determine that the State Medical Board is competent to determine whether a physician has failed to conform to a minimum standard of care.

"The requirement for expert testimony in the record of a license revocation proceeding usurps the power of the State Medical Board's broad measure of discretion. The very purpose for having such a specialized technical board would be negated by mandating that expert testimony be

presented. Expert opinion testimony can be presented in a medical board proceeding, but the board is not required to reach the same conclusion as the expert witness. The weight to be given to such expert opinion testimony depends upon the board's estimate as to the propriety and reasonableness, but such testimony is not binding upon such an experienced and professional board.

"* * *"

Thus, to the extent that the common pleas court stated that "[a] judge or hearing officer's decision should be made on the basis of the record before him and the evidence presented at the hearing on trial" and "[n]othing else should be taken into consideration in arriving at the decision," we find such to be in contravention of *Arlen* v. *State, supra.*

The first assignment of error is well-taken, but in view of our conclusions reached in disposing of the second and third assignments of error, such error is not prejudicial and does not permit reversal of the lower court's judgment of reversal.

Assignment of Error No. Four:

"The lower court erred in analyzing the board's order in terms of a negligence medical malpractice standard and failed to recognize that the standards set forth in R.C. Sec. 4731.22(B)(2) and (B)(6) are to be construed by the board based upon its own expertise."

R.C. 4731.22(B)(6) states one of the reasons for revocation or suspension of a certificate as follows:

"A departure from, or the failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances, whether or not actual injury to a patient is established[.]"

The distinction between medical malpractice and the standard set forth in R.C. 4731.22(B)(6) concerns injury. In a negligence action for malpractice, injury is an element of the cause of action. Here the departure from the required standard is the failure to conform to minimal standards of care of similar practitioners under the same or similar circumstances regardless of ensuing injury to the patient.

While the common pleas court spoke as to the medical malpractice standard resulting in injury, its ultimate conclusion dealt with the differing opinions as to what constituted a failure to conform to minimal standards of care as set forth in R.C. 4731.22(B)(6). Thus, the court properly applied the standards of R.C. 4731.22(B)(6) notwithstanding that they are generally expressed in medical malpractice terms.

The fourth assignment of error is not well-taken.

For the reasons set forth under assignments of error two and three above, and having found no reversible error, we affirm the trial court's judgment.

*Judgment affirmed.*

COLE, P.J., and GUERNSEY, J., concur.

GUERNSEY, J., retired, of the Third Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Ohio Constitution.