**REED, Appellant,**

v.

**STATE MEDICAL BOARD OF OHIO, Appellee.**

[Cite as *Reed v. State Med. Bd. of Ohio,* 162 Ohio App.3d 429, 2005-Ohio-4071.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 05AP–166.

Decided Aug. 9, 2005.

432

Hammond, Sewards & Williams and James M. McGovern, for appellant.

Jim Petro, Attorney General, and Kyle C. Wilcox, Assistant Attorney General, for appellee.

TRAVIS, Judge.

{¶ 1} Appellant, Barbara A. Reed, M.D., appeals from a February 16, 2005 judgment of the Franklin County Court of Common Pleas. The common pleas court affirmed an order of appellee, the State Medical Board of Ohio, which revoked appellant's license to practice medicine in Ohio. The board found that appellant's conduct in the practice of medicine was a departure from or a failure to conform with minimal standards of care, that appellant had failed to use reasonable-care discrimination in the selection and administration of drugs, that appellant had failed to maintain minimum standards of care of similar practitioners under the same or similar circumstances, and that appellant had failed to complete and maintain accurate medical records reflecting her examination, evaluation, and treatment of her patients.

{¶ 2} Appellant was awarded her medical degree in 1949. Appellant has practiced medicine since obtaining her license.

{¶ 3} In a nine-page letter dated September 10, 2003, the board notified appellant that it intended to determine whether or not to limit, revoke, permanently revoke, or suspend appellant's license to practice medicine in Ohio. The letter outlined specific instances in which the board alleged that appellant's acts

or omissions in her medical practice warranted disciplinary action against her license.

{¶ 4} Pursuant to R.C. Chapter 119, appellant was advised of her right to request a hearing on the allegations, the time and place for filing the request, and her right to be present, to be represented by counsel, to present evidence and examine witnesses both for and against her. Appellant received the letter on September 12, 2003, and on September 26, 2003, made a timely written request for a hearing.

{¶ 5} The hearing was conducted on February 17 and 18, 2005, by Board Hearing Examiner Gregory Porter. Appellant appeared and elected to proceed without counsel.

{¶ 6} From the evidence and testimony, the hearing examiner found that appellant had excessively and inappropriately prescribed controlled substances and dangerous drugs to 11 patients without obtaining a patient history, without performing a physical examination, and without diagnostic testing to evaluate the patient complaints. Further, on a number of occasions, appellant prescribed controlled substances and dangerous drugs despite knowing that the patients were abusing the controlled substances or were exhibiting "drug-seeking behavior." [1]

{¶ 7} The hearing examiner also found that appellant had prescribed lengthy courses of antibiotics, thus placing her patients at risk for developing bacterial infections resistant to commonly used antibiotics, and that she had inappropriately prescribed potent, broad-spectrum antibiotics that should be reserved for select clinical circumstances to avoid the development of resistant bacterial strains. The hearing examiner determined that appellant had failed to maintain medical records that accurately reflected her evaluation of the patient's symptoms, her examination of the patient, the use of controlled substances in treatment, and the diagnosis and purpose for which controlled substances were being prescribed.

{¶ 8} The hearing examiner concluded that appellant's conduct of her medical practice displayed grounds for discipline under R.C. 4731.22(B)(2), (6), and (20)

---

1. As an example, appellant has cared for Patient 5 since 1999. Appellant frequently prescribed analgesic controlled substances for Patient 5 for claimed back pain and anxiety without performing and documenting an appropriate evaluation and assessment of Patient 5's symptoms. The prescriptions for Xanax and Darvocet were provided to Patient 5 despite clear "drug-seeking behavior" by the patient, including patient preference for a particular controlled substance, patient overdose on Darvocet and Soma and patient anger and rudeness in seeking more "pain pills." Other examples of inappropriate prescribing of controlled substances were documented as well, including frequent prescriptions for analgesic controlled substances, sedative-hypnotics, and antidepressants without corresponding diagnoses or assessments of patient complaints.

and Ohio Adm.Code 4731–11–02(D). Specifically, appellant had failed to use reasonable-care discrimination in the administration of drugs and had failed to employ acceptable scientific methods in the selection of drugs or other modalities for the treatment of disease. R.C. 4731.22(B)(2). Additionally, appellant's care of certain patients was a departure from or a failure to conform to the minimal standards of care of similar practitioners under the same or similar circumstances. R.C. 4731.22(B)(6). Finally, appellant had failed to complete and maintain accurate records reflecting her examination, evaluation, diagnosis, and treatment of patients and had failed to accurately reflect the use of controlled substances and the purpose for which those controlled substances were prescribed. Ohio Adm.Code 4731–11–02(D). As a result, the hearing examiner concluded that appellant's continued practice of medicine presented a danger to the public, and he recommended that her license be permanently revoked.

{¶ 9} Appellant objected to the hearing examiner's report and recommendation. On June 9, 2004, the full board conducted a hearing on the report and recommendations and appellant's objections. Appellant was provided with notice of the hearing and again elected to appear without counsel.

{¶ 10} The board revoked appellant's license based on findings that she had prescribed, dispensed, or administered controlled substances without an appropriate prior examination of patients; that she had failed to use acceptable methods in the selection of drugs; that her treatment of patients had failed to conform to minimal standards of care, and that she had failed to maintain proper medical records, all of which violated the Medical Practices Act and/or rules of the board.

{¶ 11} Appellant sets forth the following assignments of error for review:

1. The lower court judgment affirming the Board Order was an abuse of discretion because the Board Order is not supported by the requisite evidence due to the incompetent testimony provided by the Board's expert witness.

2. The lower court judgment affirming the Board Order was an abuse of discretion because the Board's allegations are barred by the doctrine of laches.

3. The lower court judgment affirming the Board Order was an abuse of discretion because the Board's Order is based, in part, on improper argument by the Assistant Attorney General.

4. The lower court judgment affirming the Board Order was an abuse of discretion because Dr. Reed's rights to due process were repeatedly violated by the Board.

5. The lower court judgment affirming the Board Order was an abuse of discretion because the Board failed to consider mitigating circumstances justifying a reduction in the degree of discipline to be imposed.

6.  The lower court judgment affirming the Board Order was an abuse of discretion because the permanent revocation of Dr. Reed's license is too harsh a sanction for what transpired.

{¶ 12} In an appeal from an order of the board under R.C. 119.12, a reviewing trial court must determine whether the order of the agency is supported by reliable, probative, and substantial evidence and is in accordance with law. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 614 N.E.2d 748. The reviewing court may not substitute its judgment for that of the administrative agency.

{¶ 13} Reliable evidence is dependable—that is, evidence that can be confidently trusted with a reasonable probability that the evidence is true. Probative evidence is relevant evidence that tends to prove the issue in question. Substantial evidence is evidence with some weight, importance, and value. *Our Place, Inc. v. Ohio Liquor Control Comm.* (1992), 63 Ohio St.3d 570, 571, 589 N.E.2d 1303.

{¶ 14} Appellate review of the sufficiency of the evidence in an appeal under R.C. 119.12 is limited. An appellate court determines only whether the trial court abused its discretion. *Pons,* 66 Ohio St.3d at 621, 614 N.E.2d 748. An abuse of discretion is not merely an error in judgment, but a perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for that of the board or the trial court. Id.

{¶ 15} When reviewing orders from the board, courts must accord due deference to the board's interpretation of the technical and ethical requirements of the medical profession. " 'The purpose of the General Assembly in providing for administrative hearings in particular fields was to facilitate such matters by placing the decision on facts with boards or commissions composed of [people] equipped with the necessary knowledge and experience pertaining to a particular field.' " *Arlen v. State Med. Bd.* (1980), 61 Ohio St.2d 168, 173, 15 O.O.3d 190, 399 N.E.2d 1251, quoting *Farrand v. State Med. Bd.* (1949), 151 Ohio St. 222, 224, 39 O.O. 41, 85 N.E.2d 113.[2]

{¶ 16} In her first assignment of error, appellant asserts that the board erroneously relied upon incompetent medical testimony to support its findings and order. Appellant argues that the board's witness, Joseph Clark, M.D., was not qualified to testify on medical issues because Dr. Clark did not qualify as an

---

**2.** Appellate review of questions of law is plenary. *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 587 N.E.2d 835, paragraph one of the syllabus.

expert in the practice of medicine pursuant to Evid.R. 601(D). Appellant reasons that the testimony of Dr. Clark should have been excluded, and without the testimony of Dr. Clark, the evidence is insufficient to support the board's order.

{¶ 17} Appellant does not question Dr. Clark's qualifications to practice medicine or to provide medical advice and opinion on medical issues. Dr. Clark received his medical degree in 1978. He has practiced medicine in Ohio since 1988 and in Alabama since 1979. He holds board certification by the National Board of Medical Examiners and the American Board of Internal Medicine. Dr. Clark holds medical privileges at a number of hospitals in the Cleveland area and is an assistant clinical professor of medicine at Case Western Reserve University School of Medicine in Cleveland, Ohio. Currently, Dr. Clark is a staff physician at NorthEast Ohio Neighborhood Health Services, Inc., located in Cleveland, Ohio. He has been a staff physician and assistant medical director of the Franklin Memorial Primary Health Center in Mobile, Alabama. Although Dr. Clark's administrative duties as medical director of NorthEast Ohio Neighborhood Health Services have reduced his active clinical practice to approximately 20 percent of his professional time, he remains an active medical practitioner and supervises a number of other medical providers of a broad range of services to patients. Therefore, absent Evid.R. 601(D), the admissibility of Dr. Clark's professional opinions would not be at issue.

{¶ 18} Evid.R. 601 deals with general rules of competency of witnesses. Evid.R. 601(D) provides that every person is competent to be a witness except the following:

A person giving expert testimony on the issue of liability in any claim asserted in any civil action against a physician * * * arising out of the diagnosis, care, or treatment of any person by a physician * * * unless the person testifying is licensed to practice medicine * * * by the state medical board * * * and unless the person devotes at least one-half of his or her professional time to the active clinical practice in his or her field of licensure, or to its instruction in an accredited school.

The object of Evid.R. 601 is to declare all witnesses competent to testify unless specifically designated incompetent. Therefore, unless a witness falls within the express terms of exclusion, the presumption is for competency.

{¶ 19} The traditional rules of evidence are relaxed in administrative hearings. *Haley v. Ohio State Dental Bd.* (1982), 7 Ohio App.3d 1, 7 OBR 1, 453 N.E.2d 1262. Ohio Adm.Code 4731–13–25 provides, "The 'Ohio Rules of Evidence' may be taken into consideration by the board or its hearing examiner in determining the admissibility of evidence, but shall not be controlling." Thus, compliance with Evid.R. 601(D) is not required for the board to hear expert opinion testimony on issues pending before the board. When coupled with the

unquestioned medical credentials of Dr. Clark, Ohio Adm.Code 4731–13–25 supports the admissibility of his testimony.

{¶ 20} Moreover, "[e]xpert testimony as to a standard of practice is not mandatory in a medical disciplinary proceeding to determine whether a physician's conduct falls below a reasonable standard of medical care." *Arlen*, 61 Ohio St.2d 168, 15 O.O.3d 190, 399 N.E.2d 1251, syllabus. Accord *State Med. Bd. v. Murray* (1993), 66 Ohio St.3d 527, 613 N.E.2d 636. Expert testimony may be necessary "when the trier of facts is confronted with issues that require scientific or specialized knowledge or experience beyond the scope of common occurrences. However, the need for expert opinion testimony is negated where the trier of facts, such as in the instant cause, is possessed of appropriate expertise and is capable of drawing its own conclusions and inferences." *Arlen*, 61 Ohio St.2d at 173, 15 O.O.3d 190, 399 N.E.2d 1251. Thus, expert opinion testimony was not required for the board to make findings in this case. When coupled with the expertise of those board members who are licensed physicians, fact testimony alone was sufficient for the board to reach its conclusions without regard to the opinion testimony of Dr. Clark. Although Dr. Clark's testimony was not required to support the board's actions, we find that the hearing examiner did not commit error in admitting the professional opinions of Dr. Clark on the issues before the board. The first assignment of error is overruled.

{¶ 21} Appellant's second assignment of error asserts that the equitable doctrine of laches barred the board from taking action against appellant. We disagree.

{¶ 22} As a general rule, in the absence of a statute to the contrary, when the government takes action to enforce a public right or to protect the public interest, laches is not a defense. *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 555 N.E.2d 630; *McCutcheon v. Ohio State Med. Bd.* (1989), 65 Ohio App.3d 49, 56, 582 N.E.2d 1030. "[I]n order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting [the] claim." *Smith v. Smith* (1959), 168 Ohio St. 447, 7 O.O.2d 276, 156 N.E.2d 113, paragraph three of the syllabus.

{¶ 23} Appellant argues that the delay in bringing disciplinary proceedings prejudiced her ability to defend herself because she had difficulty recalling her rationale for the treatment of various patients. This argument ignores the fact that one of the allegations against appellant was her failure to maintain proper medical records. Time did not alter appellant's medical records. Those records demonstrated that appellant did not properly document the subjective and objective symptoms of her patients, whether she performed scientific testing to

verify or refute the symptoms, her assessment of the patient's medical condition, and her treatment plan, all of which are necessary to conform to minimal standards of the practice of medicine under the rules of the board. See Ohio Adm.Code 4731–11–02(D).

{¶ 24} Additionally, appellant was charged with failure to use reasonable care in the selections and administration of various controlled substances and dangerous drugs. The board alleged that appellant prescribed controlled substances and dangerous drugs in quantities and with refills far beyond accepted medical practice. Even if appellant could not recall specific information for individual patients, had there been a medically sound, theoretical basis for prescribing large quantities of controlled substances and numerous refills to patients in general, appellant could have offered that medically approved explanation.

{¶ 25} Instead of offering a generally accepted, medically sound reason to prescribe in large quantities and with authorization for multiple refills, appellant's responses support the findings of the hearing examiner and the board. For example, when board counsel questioned appellant's failure to obtain throat cultures to verify or rule out a bacterial infection, appellant stated she stopped doing so because the hospital that ran the tests falsified her records, and the tests were just money in the bank for the hospital.

{¶ 26} When questioned about her prescription for 500 milligrams of amoxicillin, a powerful antibiotic, to be taken four times a day, rather than the standard 250-milligram dose to be taken three times a day, appellant explained that she wrote the prescription "because the patient came in and said, 'Well, the other doctors up and down the street are giving us 500 milligrams instead of the 250,' and she jumped all over me and said that she would rather have the 500, because she said it was the same price * * * as the 250." [3] Appellant explained that she allowed two refills to be ordered at the patient's discretion, stating that "she could give them to her husband if she felt like it, which a lot of these people do, give them to somebody else in the family. It happens over and over again, as you know."

{¶ 27} Whether the equitable doctrine of laches should be applied in a case is a question primarily addressed to the discretion of the trial court. *Gardner v. Panama RR. Co.* (1951), 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31. Appellant has failed to demonstrate an abuse of the trial court's discretion on this issue. The second assignment of error is overruled.

---

**3.** The physician's desk reference recommends that amoxicillin be limited to three 250 mg. doses per day for ten days. In contrast, with two refills approved, appellant authorized 90 doses of amoxicillin.

{¶ 28} In her third assignment of error, appellant asserts that the board's order was based upon improper argument by the board's counsel. In her corrected brief, appellant sets forth the following portion of the argument made by the assistant attorney general:

> She rarely, if ever, identifies the reasons for her treatments or prescriptions in these records. Certainly, no subsequent treatment provider would get any use out of these records.
>
> * * *
>
> Mr. Wilcox commented that Dr. Reed's attitude seems to be that, as long as her patients ask for a Schedule IV drug, or lower, and not Schedule II drugs, that it is okay for her to give them out in large quantities.

Appellant states that the argument by board counsel was unsupported by the facts of the case and that the board erroneously relied on the argument to revoke appellant's license.

{¶ 29} The portion of the argument quoted by appellant appears to be taken from the minutes of the board. The minutes of board meetings are not verbatim, but are a summary of the proceedings. Because the minutes are in summary form, the court cannot know precisely what counsel argued. However, for purposes of appeal, the court will accept that the summary reflects the substance of the argument.

{¶ 30} Counsel should be afforded great latitude in closing argument. *State v. Champion* (1924), 109 Ohio St. 281, 289, 142 N.E. 141. "The assessment of whether the permissible bounds of closing argument have been exceeded is, in the first instance, a discretionary function to be performed by the trial court. Such determination will not be reversed on appeal absent an abuse of discretion." *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, paragraph three of the syllabus. However, where gross and abusive conduct occurs, the trial court is bound, sua sponte, to correct the prejudicial effect of counsel's misconduct. *Pesek v. Univ. Neurologists Assn., Inc.* (2000), 87 Ohio St.3d 495, 501, 721 N.E.2d 1011, citing *Snyder v. Stanford* (1968), 15 Ohio St.2d 31, 37, 44 O.O.2d 18, 238 N.E.2d 563.

{¶ 31} In this instance, we find that counsel argued permissible inferences that could be drawn from the evidence presented. First, in a number of instances, appellant's medical records were, to say the least, sparse, and it is reasonable to argue that those limited records contained insufficient information to meet the minimum standards required of medical practitioners. Second, on a number of occasions, evidence was presented that appellant had failed to properly discriminate in making medical decisions to prescribe certain scheduled drugs. The arguments and inferences may be drawn from the record of proceedings and

were noted in the summary of evidence set out in the report and recommendation of the hearing examiner. Counsel did not make an improper argument or stray from the facts of the case. The third assignment of error is overruled.

{¶ 32} In her fourth assignment of error, appellant argues that the board repeatedly denied her right to due process of law. Appellant concludes that she was denied due process in three particulars: because there was insufficient evidence to support the board's findings, because the board ignored appellant's explanation for her decisions to prescribe controlled substances to patients, and because the board ignored her attempts to mitigate the penalty imposed.

{¶ 33} The concepts of weight and sufficiency of evidence are qualitatively different in a criminal trial. In a criminal trial, a conviction may be reversed and remanded for a new trial where the verdict is against the manifest weight of the evidence. Under those circumstances, the reviewing appellate court is said to sit as a "thirteenth juror," and the due process clause is not implicated. A criminal conviction based upon insufficient evidence denies due process. *Tibbs v. Florida* (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652; *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. In a civil trial, due process requirements are not subject to the heightened constitutional considerations of a criminal trial. Instead, in a civil case, the tests for weight and sufficiency of the evidence are essentially the same.

{¶ 34} Ohio Adm.Code 4731–11–05(B) requires a physician to complete and maintain medical records for patients. The records must include a diagnosis, the purpose for which a substance or drug is prescribed, and information upon which the diagnosis leading to the use of the substance or drug is based.

{¶ 35} Evidence was presented that appellant failed to maintain proper medical records under the standards of the board. Under the test set forth in *Our Place, Inc.*, 63 Ohio St.3d 570, 589 N.E.2d 1303, that evidence was reliable in that it was believable. The evidence was probative because it tended to prove the issue in question. The evidence was substantial because it had some weight, importance, and value. Therefore, there was credible evidence to support the board's finding that appellant failed to maintain her patient records as required by board rule. The fact that appellant disagrees with the finding does not mean there was no evidence upon which to base the board's decision. Findings based on sufficient evidence did not deny appellant due process of law.

{¶ 36} In like manner, we reject the claim that the board ignored appellant's explanation of her clinical decisions in treating patients. There was evidence presented that appellant lacked a medically approved basis for administering various antibiotics and controlled substances and that her conduct with regard to controlled substances did not conform to the standards of the profes-

sion. It is not for this court to question whether certain medical practices conform to accepted standards of the medical profession. The board found appellant's explanation wanting.[4] We are not in a position to substitute our judgment for that of the board.

{¶ 37} In the final portion of her fourth assignment of error, appellant asserts that she was denied due process of law because the board failed to consider her offer of mitigation. The minutes of the board show that the board reviewed the complete record of the proceedings before the hearing examiner, including appellant's testimony. The board heard appellant's oral presentation at the hearing. Aware of its own records, the board knew that appellant had practiced medicine for many years with no previous disciplinary action taken against her license. In the absence of some affirmative indication that the board refused to consider appellant's presentation or her history, we must presume the board considered those matters in mitigation, but gave them little or no weight.[5] Moreover, while the board may consider both aggravating and mitigating circumstances, it is not required to do so. *Urban v. State Med. Bd.*, Franklin App. No. 03AP–426, 2004-Ohio-104, 2004 WL 63941. The fourth assignment of error is overruled.

{¶ 38} In her fifth assignment of error, appellant maintains that the board failed to consider mitigating factors when it determined the appropriate sanction to impose. Having reviewed the record, we find that this assignment of error lacks merit. As discussed above, the board reviewed the testimony before the hearing examiner, heard appellant's oral presentation, and was aware of appellant's considerable length of service to her patients and the lack of disciplinary action against her. Although the minutes do not specifically address the subject of mitigation, there is no indication that the board ignored appellant's presentation.

---

4. Appellant explained that she prescribed three times the recommended number of doses of amoxicillin and double the recommended strength because her patient demanded the prescription and because the patient might give extra doses to her husband. Appellant's own testimony demonstrates that appellant did not use appropriate discrimination in prescribing controlled substances. Appellant's failure to offer any sound medical reason for her decision to prescribe controlled substances is unlike the facts of *Lawrence v. State Med. Bd.* (Mar. 11, 1993), Franklin App. No. 92AP–1018, 1993 WL 69476, cited by appellant. In *Lawrence*, the hearing officer inconsistently found that the physician kept thorough patient records, but found that the records were difficult for a third person, the nonphysician hearing examiner, to interpret. That is not the case in the within appeal.

5. On this point, we part company with the trial court, which concluded that the board did not consider mitigation.

{¶ 39} Furthermore, while the guidelines of the board permit the board to consider mitigating circumstances when hearing a disciplinary case, those guidelines do not require the board to do so. See *Urban*, 2004-Ohio-104, 2004 WL 63941. The board is free to ignore mitigation when deciding what penalty to impose.

{¶ 40} Once reliable, probative, and substantial evidence is found to support an order by the board, the reviewing court may not modify a sanction authorized by statute. *Henry's Cafe, Inc. v. Bd. of Liquor Control* (1959), 170 Ohio St. 233, 10 O.O.2d 177, 163 N.E.2d 678. See, also, *Hale v. Ohio State Veterinary Med. Bd.* (1988), 47 Ohio App.3d 167, 548 N.E.2d 247. Permanent revocation of a medical license is within the range of acceptable choices for discipline available to the board. The board was free to favorably view the many years of medical practice provided by appellant, the many years of service without any disciplinary blemish, her absence of dishonest or selfish motive, her disclosure of her failings before the board, and other mitigation presented. The board could have limited or suspended appellant's license, placed appellant on probation, or reprimanded appellant. R.C. 4731.22(B). The board was free to opt for a form of interim rehabilitation or remedial measure. Instead, the board elected to permanently revoke appellant's license. Permanent revocation is permitted by statute. Id. Even if this court were to view those mitigating factors favorably and disagree with the penalty the board imposed, the court has no power to modify the board's choice of sanction.[6] The fifth assignment of error is overruled.

{¶ 41} In her sixth and final assignment of error, appellant asserts that revocation of her license to practice medicine is an excessive sanction. As a matter of law, we are compelled to deny this assignment of error because we have no authority to act as appellant asks. The determination of the appropriate sanction in an administrative hearing is strictly for the agency. *Henry's Cafe,* 170 Ohio St. 233, 10 O.O.2d 177, 163 N.E.2d 678; *Roy v. Ohio State Med. Bd.* (1992), 80 Ohio App.3d 675, 610 N.E.2d 562.

{¶ 42} We agree that revocation of a professional license is a harsh result. We agree that after a lifetime of professional service, it is regrettable that appellant will have her license to practice medicine revoked. However, we are not permitted to substitute our judgment for that of the board. As long as the order of the board is supported by reliable, probative, and substantial evidence and is in accordance with law, we must affirm. *Farrand,* 151 Ohio St.

---

6. This is not to say that the state medical board is above review or can operate without due regard to the principles of due process of law. See the concerns expressed in *State Med. Bd. v. Murray* (1993), 66 Ohio St.3d 527, 538, 613 N.E.2d 636 (Pfeifer, J., concurring).

222, 39 O.O. 41, 85 N.E.2d 113; *Henry's Cafe,* supra. The sixth assignment of error is overruled.

{¶ 43} Having overruled all of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

Judgment affirmed.

SADLER and BOWMAN, JJ., concur.

BOWMAN, Judge, retired, sitting by assignment.