**In re GRIFFITH.**

[Cite as *In re Griffith* (1991), 66 Ohio App.3d 658.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–577.

Decided Oct. 17, 1991.

*Arthur H. Thomas, Jr.*, for appellant.

*Lee I. Fisher*, Attorney General, and *Cheryl Minsterman*, for appellee.

---

Strausbaugh, Judge.

Appellant, Donn Griffith, D.V.M., appeals from the judgment of the Franklin County Court of Common Pleas affirming the adjudicative order of appellee, Ohio Veterinary Medical Board ("board"), ordering that appellant be issued a written reprimand.

On August 4, 1989, Karen J. Cummings sent a letter to the board alleging that appellant had acted in a negligent manner in the treatment and care of Cummings' kitten, Amber. The board subsequently determined that there was probable cause for formal administrative action and directed the board's executive secretary to file formal written charges with the board. By letter dated November 20, 1989, the board sent appellant a notice of opportunity for hearing which stated that appellant was alleged to be guilty of violating R.C. 4741.22(A) and (R) and Ohio Adm.Code 4741–1–03(A) and (B).

The matter came for hearing before the board on July 11, 1990. The board made the following findings of fact. On July 19, 1989, Cummings presented Amber to appellant to declaw the cat and perform an ovariohysterectomy. Appellant performed the procedures and Amber was under appellant's care until July 24, 1989.

On the evening of July 24, 1989, Cummings became concerned about Amber's condition and contacted the Beechwold Veterinary Hospital. By the next day, Amber's condition had deteriorated and Cummings took Amber to the Beechwold Veterinary Hospital where the kitten was examined by Dr. Steve Wenger and Dr. Edward Winderl. Tests revealed that Amber had a large bladder, an empty G.I. tract and some enlargement of the kidney. Based upon Amber's condition, the kitten was scheduled for surgery with Dr. Donna Nichol, the head surgeon at Beechwold Veterinary Hospital.

The surgery revealed that the uterine horns had been pulled over the neck of the bladder and sutured with one ligature around both horns, causing an obstruction to the bladder. Dr. Nichol drained the urine from the bladder,

removed the ligature around the uterine horns and expressed the bladder. Approximately thirty minutes after surgery, Amber expired.

Subsequent to the hearing, the board issued an adjudication order in which it concluded that appellant had violated R.C. 4741.22(A) and Ohio Adm.Code 4741–1–03(A) and (B). The board ordered that appellant be issued a written reprimand. The board further concluded that appellant had not violated R.C. 4741.22(R).

On October 9, 1990, appellant filed a notice of appeal in the Franklin County Court of Common Pleas. By judgment entry dated April 19, 1991, the trial court affirmed the order of the board, finding that the order was supported by reliable, probative, and substantial evidence and was in accordance with law, and further finding that the board had authority to promulgate Ohio Adm. Code 4741–1–03(A) and (B).

Appellant now appeals to this court from the judgment of the trial court, setting forth the following three assignments of error for review:

"1. The trial court erred to the prejudice of appellant when it affirmed the decision of the Ohio Veterinary Medical Board reprimanding appellant for violating Ohio Revised Code 4741.22(A) when the finding was not supported by reliable, probative and substantial evidence and not in accordance with law.

"2. The trial court erred to the prejudice of appellant when it found that the board had authority to promulgate Administrative Rule 4741–1–03(A) and (B).

"3. The trial court erred to the prejudice of appellant when it affirmed the decision of the Ohio Veterinary Medical Board substituting its expert opinion for that of an expert witness who is acknowledged by the board as an expert witness and whose testimony was not discounted by the board."

The standard of review to be applied by the trial court in deciding an administrative appeal is set forth in R.C. 119.12. That statute provides that the court may affirm the order of the agency if it finds, based upon consideration of the entire record and such additional evidence admitted by the court, " * * * that the order is supported by reliable, probative, and substantial evidence and is in accordance with law."

However, an appellate court, in reviewing the order of an administrative agency, has a more limited role than that of a trial court reviewing the same order. *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 260–261, 533 N.E.2d 264, 266–268. In *Lorain City*, the Supreme Court of Ohio stated:

" * * * It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. The appellate court is to determine only

if the trial court has abused its discretion. An abuse of discretion ' " * * * implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency." ' * * * Absent an abuse of discretion on the part of the trial court, a court of appeals must affirm the trial court's judgment. * * *

"The fact that the court of appeals * * * might have arrived at a different conclusion than did the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." *Id.* at 261, 533 N.E.2d at 267.

We will address appellant's first and second assignments of error in inverse order. Under his second assignment of error, appellant asserts that the trial court erred when it found that the board had authority to promulgate Ohio Adm.Code 4741-1-03. The thrust of appellant's argument is that Ohio Adm.Code 4741-1-03(A) and (B) are in conflict with R.C. 4741.22, and that by enacting the above rules the board exceeded its statutory authority.

Pursuant to R.C. 4741.05, the board may make and prescribe " * * * such rules as are necessary to carry out the provisions of sections 4741.01 to 4741.19 of the Revised Code * * *." R.C. 4741.22 provides in relevant part:

"The state veterinary medical board may refuse to issue a license or a temporary permit to any applicant, may issue a reprimand, or suspend or revoke the license or the temporary permit of any person licensed to practice veterinary medicine who:

"(A) In the conduct of his practice does not conform to the *rules prescribed by the board for proper sanitary and hygienic methods* to be used in the care and treatment of animals[.]" (Emphasis added.)

Ohio Adm.Code 4741-1-03 states in pertinent part:

"Pursuant to section 4741.22 of the Revised Code, the board shall, to the extent permitted by law, reprimand, revoke, suspend, place on probation, refuse to register or reinstate a license for one or more of the following reasons:

"(A) Failure to use reasonable care or discrimination in the administration of drugs, or failure to employ acceptable scientific methods in the selection of drugs or other modalities for treatment of disease or in the conduct of surgery.

"(B) A departure from, or the failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances, whether or not actual injury to a patient, is established."

While appellant acknowledges that R.C. 4741.22(A) authorizes the board to enact rules regarding "proper sanitary and hygienic methods to be used in the care and treatment of animals," appellant argues that the administrative rules promulgated by the board under Ohio Adm.Code 4741–1–03(A) and (B) do not relate to such matters. We disagree.

In the present case, the trial court noted that the common meaning of the term "hygienic" related to a form of medical science pertaining to health. See The Random House Dictionary of the English Language (2 Ed.1987) 939 ("conducive to good health"). In construing the language of R.C. 4741.22(A) regarding "care and treatment," the trial court held:

" * * * This implies more than a provision of sanitary or hygienic accommodations, but rather refers also to hygienic treatment. It cannot be concluded that the failure to maintain adequate records and the failure to use proper surgical methods, both of which were evidenced in the record, were matters that necessarily fell beyond the scope of R.C. 4741.22(A). * * * "

We agree with the finding of the trial court that the board had the authority to promulgate rules concerning the care and treatment of animal health. This court has previously held that "[t]he purpose of administrative rulemaking is to facilitate the administrative agency's placing into effect the policy declared by the General Assembly in the statutes to be administered by the agency." *Carroll v. Dept. of Admin. Services* (1983), 10 Ohio App.3d 108, 110, 10 OBR 132, 133, 460 N.E.2d 704, 706. In construing the statutory intent of R.C. 4741.22(A), we find no conflict between that section and the rules enacted by the board under Ohio Adm.Code 4741–1–03(A) and (B).

Based upon the foregoing, appellant's second assignment of error is overruled.

■ Under his first assignment of error, appellant asserts that the trial court erred in affirming the order of the board when the board's decision was not supported by reliable, probative, and substantial evidence and was not in accordance with law. Appellant maintains that he did not perform unacceptable surgery on the kitten.

In the present case, the board found that appellant had failed to employ proper scientific methods in performing surgery on the kitten and that appellant departed from or failed to conform to minimal standards of care of similar practitioners under the same or similar circumstances. Regarding appellant's conduct of surgery, the board found that the methods employed by appellant in removing and suturing Amber's uterine horns were unacceptable. More specifically, the board found that appellant had tied the uterine horns around the neck of the kitten's bladder and sutured with a single ligature,

resulting in an obstruction of the bladder. The board determined that the use of a single ligature in this case was inappropriate conduct. The board also determined that appellant's postsurgery records were insufficient to substantiate Amber's condition. Further, appellant's records failed to reflect that Amber had been seen or evaluated during the two days prior to release nor did the records indicate that appellant examined Amber prior to releasing the kitten from his care.

Based upon the record before this court, we find that the trial court reasonably determined that the board's decision was supported by reliable, probative, and substantial evidence and was in accordance with law. Accordingly, the trial court did not abuse its discretion in affirming the order of the board.

Appellant's first assignment of error is not well taken and is overruled.

■ Under his third assignment of error, appellant asserts that the trial court erred in affirming the order of the board when the board substituted its own expert opinion for that of appellant's expert witness. Appellant notes that in the administrative hearing before the board, he presented an expert witness to testify on his behalf. Appellant cites from the order of the board which states that during the hearing:

" * * * [Appellant] produced an expert witness in his behalf. It is not the intent of the Board to discount this witness's testimony. However, the Board in its own expertise, finds the surgery which * * * [appellant] performed on Amber to be unacceptable. * * * "

Appellant argues that there is no case authority to permit the board to arbitrarily discount the testimony of an expert and substitute its own opinion.

In *Arlen v. State Medical Bd.* (1980), 61 Ohio St.2d 168, 15 O.O.3d 190, 399 N.E.2d 1251, the Supreme Court of Ohio examined the issue of expert testimony in disciplinary proceedings before the State Medical Board. In *Arlen*, the court held:

"A medical disciplinary proceeding * * * is a special statutory proceeding which purports to maintain sound professional conduct. The licensing board, which is comprised of individuals fitted by training and expertise to perform the duties imposed upon it, weighs and considers whether a certain act is one of 'reasonable care discrimination' or a departure from the 'minimal standards of care' within the medical profession.

"The need for expert medical testimony is quite evident when the trier of facts is confronted with issues that require scientific or specialized knowledge or experience beyond the scope of common occurrences. However, the need for expert opinion testimony is negated where the trier of facts, such as in the

instant cause, is possessed of appropriate expertise and is capable of drawing its own conclusions and inferences.

" * * *

"The Connecticut Supreme Court of Errors, in *Jaffe v. State Department of Health* (1949), 135 Conn. 339, 64 A.2d 330, addressed the same issue as in the case at bar. In discussing the need for expert opinion for such a specialized board, such as in the instant cause, that court stated, at pages 349–350 [64 A.2d at 336]:

" ' * * * Expert opinions of other physicians offered before it could have been disregarded by it, and from a practical standpoint would in all probability have little, if any, effect in bringing it to a decision at variance with its own conclusion upon the question whether or not the conduct of a practitioner had been compatible with professional standards or whether or not he was competent.  * * * '

"Finding the above rationale proper, we determine that the State Medical Board is competent to determine whether a physician has failed to conform to a minimum standard of care.

" * * * *Expert opinion testimony can be presented in a medical board proceeding, but the board is not required to reach the same conclusion as the expert witness.* The weight to be given to such expert opinion testimony depends upon the board's estimate as to the propriety and reasonableness, but such testimony is not binding upon such an experienced and professional board." (Emphasis added.) *Id.* at 172–174, 15 O.O.3d at 193–194, 399 N.E.2d at 1254–1255.

We find the reasoning in *Arlen* to be applicable to the instant action. During the hearing in the present case, the board was under no obligation to accept the explanation of appellant's expert witness. Rather, the board, sitting as the trier of facts, possessed the expertise to determine whether appellant's conduct conformed to minimal standards of care. We note that the principles articulated in *Arlen* have been applied to cases involving proceedings before the State Veterinary Medical Board. See, *e.g., Lies v. Veterinary Medical Bd.* (1981), 2 Ohio App.3d 204, 211, 2 OBR 223, 230–231, 441 N.E.2d 584, 591–592.

Appellant's third assignment of error is without merit and is overruled.

Accordingly, appellant's three assignments of error are overruled and the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

Bowman, P.J., and Tyack, J., concur.