JOURNAL ENTRY and OPINION
Appellant Gurdas S. Dass, DVM, appeals from the trial court order that affirmed the decision of appellee The Ohio Veterinary Medical Licensing Board. In a disciplinary action against appellant, appellee reviewed the report and recommendation of one of its hearing officers, rejected it, and determined appellant had violated certain sections of the Ohio Revised Code and the Ohio Administrative Code. Appellee further ordered both a suspension of appellant's license to practice veterinary medicine for a short period of time and the imposition of a fine upon appellant.
Appellant asserts the trial court order affirming appellee's decision is improper, contending the trial court failed to perform its proper function in its review of the decision. Appellant further asserts appellee's decision is neither in accordance with law nor supported by reliable, substantial and credible evidence in the record. This court has reviewed both the trial court's order and the record and finds appellant's assertions to be without foundation. Therefore, the trial court order is affirmed.
The disciplinary action taken by appellee against appellant resulted from appellant's treatment of a feline patient from September through November, 1994. The patient, Felix, who was owned by the Mitchells, had been appellant's patient for annual "check-ups"[1] and routine treatment since 1991.
In September 1994, Mrs. Mitchell brought Felix to appellant's veterinary facility with complaints that the cat was losing hair, scratching and biting when Mrs. Mitchell attempted to touch its back. Appellant examined the cat and found no evidence of either flea infestation or a fungus infection of the skin. Appellant decided to administer injections of a steroid, cortisone, and an antihistamine; he further provided Mrs. Mitchell with steroid-antihistamine tablets to administer to her cat orally. Although appellant noted the foregoing facts on Felix's medical record, appellant made no notation concerning either Felix's weight, which one year earlier had been nineteen pounds, or the dosages of the medications he had provided. Much later, appellant stated he estimated Felix's weight at the time of this visit at "20-22 pounds."
On November 4, 1994 Mrs. Mitchell returned, indicating the problems Felix had been experiencing previously had returned when the supply of antihistamine tablets had been exhausted. Although appellant's examination of Felix was inconclusive, he noted the cat seemed listless and seemed to be suffering from a skin problem. Suspecting hypo-thyroidism might be the cause of these conditions, appellant took a blood sample for testing purposes. He then provided another cortisone injection and additional antihistamine tablets. Appellant failed to note on Felix's medical record the tentative diagnosis, the cat's weight, and the dosage of the medications he had provided.
On November 7, 1994 appellant received the results of Felix's blood test. These caused him to suspect Felix was suffering from diabetes. He requested that Mrs. Mitchell return to his facility with Felix. When she did so, appellant conducted a urine test on the cat. This test indicated a higher-than-normal level of glucose. Appellant informed Mrs. Mitchell the cat should stay at the facility for medication and observation.
Appellant administered to Felix that morning a tranquilizer and "five units of insulin." He failed to note on Felix's medical record the fact that he had administered a tranquilizer, the time of day of these injections, and the particular type of insulin he employed. Although appellant later believed the cat seemed to respond to his treatment of it, appellant also neglected to note this observation; the medical record further failed to indicate Felix was fed on November 7, 1994.
The following day, appellant conducted another urine test and thereafter administered another "five units" of insulin. Once again, he did not place on Felix's medical record either the specific test results or an indication Felix was fed.
On November 9, 1994 appellant noticed Felix seemed to be experiencing "neurological problems" since the cat was shaking its head in an unusual manner. Appellant noted on Felix's medical record the possibility the cat was suffering "insulin shock". He failed to note any further treatment procedure, although the cat "was not eating".
The following day, November 10, 1994, appellant noted on Felix's medical record that another urine test was conducted. Its results indicated a higher-than-normal glucose level and the presence of blood. Appellant responded by noting he provided Felix with "the works", i.e., an injection of vitamins, antibiotics and "glucose fluid". Appellant further noted only that Felix also was provided with "subcutaneous feedings". Neither the kinds and dosages of medications nor the times and types of nutrition appellant provided to the cat were noted on its record.
Appellant released Felix to Mrs. Mitchell that same evening. He indicated Felix might respond to his home environment; however, Mrs. Mitchell noticed severe neurological problems in her pet almost immediately — the cat could neither stand nor "hold his head up". She proceeded to the Northeast Emergency Medical Clinic, where Felix was weighed upon his arrival. Felix weighed fourteen pounds. The emergency clinic's veterinarian recommended Felix remain overnight for treatment of a fever and dehydration.
Upon her arrival the following morning, Mrs. Mitchell was referred to the "Just Cats" veterinary hospital, owned and managed by Linda Schoenberg, DVM. The clinic personnel provided Mrs. Mitchell with copies of Felix's emergency records prior to the transfer. Mrs. Mitchell therefore supplied these to Schoenberg that same day.
Felix remained in Schoenberg's hospital for three weeks. Schoenberg treated Felix with antibiotics but did not provide Felix with insulin; her tests of his blood indicated his glucose level had returned to the normal range. However, Felix's neurological problems grew progressively worse; he lost his vision and could not orally ingest nourishment. Schoenberg finally recommended Felix's euthanization. A subsequent autopsy of the cat's body attributed the neurological disturbances he displayed to be "severe meningo-encephalitis secondary to toxoplasmosis infection."[2]
Although a subsequent veterinary malpractice lawsuit filed by the Mitchells against appellant ultimately proved to be unsuccessful, the Mitchells also filed a complaint against appellant with appellee. Appellee conducted an initial investigation of the matter.
Thereafter, on August 5, 1997, appellee notified appellant it intended to review both appellant's care and treatment of Felix in accordance with R.C. 4741.22(A) and (W) and O.A.C. 4741-1-03(B) and his record keeping with regard to the matter in accordance with O.A.C. 4741-1-03(C)(1).
In pertinent part, R.C. 4741.22 states:
§ 4741.22 Grounds for disciplinary actions; hearing.
 The state veterinary medical licensing board may refuse to issue or renew a license, registration, or temporary permit to or of any applicant who, and may issue a reprimand to, suspend or revoke the license, registration, or the temporary permit of, or impose a civil penalty pursuant to this section upon any person licensed to practice veterinary medicine or any person registered as a registered veterinary technician who:
 (A) In the conduct of the person's practice does not conform to the rules of the board governing proper, humane, sanitary, and hygienic methods to be used in the care and treatment of animals;
 * * * (W) Fails to use reasonable care in the administration of drugs, as defined in division (C) of section 4729.02 of the Revised Code, or acceptable scientific methods in the selection of those drugs or other modalities for treatment of a disease or in conduct of surgery; * * *
The relevant portions of O.A.C. 4741-1-03 stated:[3]
 4741-1-03 Minimum standards of sanitary and hygienic methods to be used in the care and treatment of animals
 Pursuant to section 4741.22 of the Revised Code, the board shall, to the extent permitted by law, reprimand, revoke, suspend, place on probation, refuse to register or reinstate a license for one or more of the following reasons:
 * * * (B) A departure from, or the failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances, whether or not actual injury to a patient is established.
 (C) Failure to keep the facility at which the practice is conducted in conformity with the following standards:
 (1) Office: clean and orderly; adequate medical record keeping systems under the statute of limitations; library of professional journals and modern texts; license and renewal displayed.
(Emphasis added.)
A hearing was conducted in this matter on April 28, 1998. The hearing officer heard the testimony of Mrs. Mitchell, Dr. Schoenberg and appellant. The hearing officer also admitted into evidence copies of the medical records kept with regard to Felix by both appellant and Schoenberg; however, the hearing officer rejected appellant's attempt to introduce into evidence the affidavits of veterinarians James Prueter and Daniel C. Stearns.
Following the hearing, the hearing officer issued a report on the matter and recommended the dismissal of the charges against appellant of violations of R.C. 4741.22(A) and (W) and O.A.C.4741-1-03(B) and (C)(1). In pertinent part, the hearing officer stated the following: (1) although appellant's records were "cryptic", they "conformed to the standard of practice for veterinarians at the time they were recorded"; (2) the evidence "failed to sustain" a charge appellant "did not use care in his selection and use of drugs" during his treatment of Felix; and (3) the evidence also did not sustain charges appellant "failed to maintain appropriate records and failed to use care in his selection and use of drugs in his treatment of Felix * * *."[4]
Appellee lodged objections to the hearing officer's conclusions. The matter thus was presented directly to five of appellee's members, meeting on August 12, 1998.
After considering the record, appellee's members issued an adjudication order in which they rejected the hearing officer's report and recommendation. In pertinent part, appellee's members made the following findings:
 Sufficient evidence was presented, both during testimony and by the exhibits, which support the charges as filed. Specifically, to the charge of record keeping, and taking into consideration the fact that, at the time Dr. Dass was cited, O.A.C. 4741-1-03 had yet to be amended, Dr. Dass's medical records fell below any reasonable standard and/or useful purpose. * * * Records, by definition, are intended to delineate a case history * * *. The transcript showed clear evidence that Dr. Dass was the only party who could clarify what his written records said or meant. This has to be considered less than "adequate record keeping". * * *
 Likewise, the Board feels that sufficient evidence was presented to substantiate the charges relative to the failure to use reasonable care in the administration of drugs and a failure to conform to the minimal standards of care of similar practitioners under the same or similar circumstances. Dr. Dass, by his own testimony, concluded that "Felix" was diabetic on the basis of one blood sample which revealed a blood glucose of 475 dl. He administered five (5) units of insulin which he estimates to have a useful duration of 10 to 12 hours and then proceeds (sic) to monitor the diabetes by only checking whether or not glucose is (sic) present in the urine. The Board will concede that there are many acceptable protocols for treating a diabetic cat, however, the one described by Dr. Dass in his testimony is not one of them. All diabetic treatment protocols in the cat, stress the importance of blood (not urine) glucose monitoring. Dr. Dass's treatment and monitoring of suspected diabetes in "Felix" was inadequate and not standard. Dr. Schoenberg's testimony substantiates the relevance and importance of calculating and using appropriate drug dosages. Also, she was absolutely correct in her statements that other causes, such as stress and corticosteroids could elevate blood glucose and allow a positive urine glucose. The fact that Dr. Dass used and prescribed corticosteroids in "Felix" prior to finding a high blood glucose level, should have alerted him to further investigate his diagnosis of diabetes, or at least alerted him to proceed very cautiously in his treatment protocol.
 The progression of "Felix" to neurological signs, or as Dr. Dass charted as "insulin shock" should have been a signal of grave concern prompting the immediate necessity for further lab work, especially the recheck of the blood glucose level. Nothing other than the administration of fluids (kind? amount?), antibiotics and vitamins (kind? amount?) was done. The lack of monitoring the treatment and progress is substandard.
(Emphasis added.)
Appellee's members concluded appellant was guilty of the charges. Appellee ordered a suspension of appellant's license to practice for sixty days but then suspended thirty of the days. Appellee further ordered appellant both to pay a fine of $500 and costs in the amount of $1381.25 and to be placed on probation for one year.
Appellant appealed appellee's order to the Cuyahoga County Court of Common Pleas pursuant to R.C. 119.12. Appellant also requested a stay of appellee's order until the trial court's resolution of his appeal. The trial court subsequently granted appellant's request. The trial court thereafter considered appellant's appeal on the administrative record and the briefs of the parties.
Ultimately, the trial court issued its opinion and order. The trial court first set forth a review of the record and stated appellee's decision. The trial court then determined appellee's decision both was supported by a preponderance of reliable, probative and substantial evidence and was in accordance with law; therefore, the trial court affirmed appellee's decision and dismissed appellant's appeal.
Appellant thereafter filed a notice of appeal from the trial court's order in this court. Appellant presents the following three interrelated assignments of error for review:
 I. THE TRIAL COURT APPLIED THE WRONG LEGAL STANDARD IN EVALUATING THE DECISION OF THE OVMLB.
 II. TRIAL COURT COMMITTED LEGAL ERROR IN FINDING THAT DR. DASS VIOLATED O.A.C. 4741-1-03.
 III. THE TRIAL COURT'S AFFIRMANCE OF THE BOARD'S DECISION WAS AN ABUSE OF DISCRETION.
Without citation to any particular portion of the trial court's opinion as required by App.R. 16(A)(7), appellant first conclusorily argues the trial court failed to fulfil its duty when considering his appeal of appellee's decision.[5] A review of the trial court's opinion belies this assertion.
The limits of each reviewing court's analysis of an appeal filed pursuant to R.C. 119.12 were set forth by the Ohio Supreme Court in Pons v. Ohio State Medical Board (1993), 66 Ohio St.3d 619 at 621, as follows:
 * * * In an appeal from a medical board's order, a reviewing trial court is bound to uphold the order if it is supported by reliable, probative, and substantial evidence, and is in accordance with law. R.C. 119.12; In re Williams (1991), 60 Ohio St.3d 85, 86, 573 N.E.2d 638, 639. The appellate court's review is even more limited than that of the trial court. While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for those of the medical board or a trial court. Instead, the appellate court must affirm the trial court's judgment. Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd. (1988), 40 Ohio St.3d 257, 260-261, 533 N.E.2d 264, 266. See, also, Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn. (1992), 63 Ohio St.3d 705, 707, 590 N.E.2d 1240, 1241.
 Moreover, when reviewing a medical board's order, courts must accord due deference to the board's interpretation of the technical and ethical requirements of its profession. The policy reason for this was noted in Arlen v. State (1980), 61 Ohio St.2d 168, 173, 15 O.O.3d 190, 194, 399 N.E.2d 1251, 1254-1255: "`* * * The purpose of the General Assembly in providing for administrative hearings in particular fields was to facilitate such matters by placing the decision on facts with boards or commissions composed of [people] equipped with the necessary knowledge and experience pertaining to a particular field. * * *'" (Quoting Farrand v. State Med. Bd. [1949], 151 Ohio St. 222, 224, 39 O.O. 41, 42, 85 N.E.2d 113, 114.)
(Emphasis added.)
The trial court in this case issued a sixteen-page opinion and order in which it thoroughly discussed both the evidence adduced at the hearing and the applicable law pursuant to R.C. 119.12. The trial court, moreover, expressly stated that in finding appellee's decision was supported by reliable, probative and substantial evidence, it had considered not only the parties' arguments but "the administrative record which includes over 100 pages of transcript and documents". Since it is clear the trial court fully evaluated this evidence prior to rendering its order, appellant's first argument fails. Kaufman v. Ohio Veterinary Med. Bd. (1990), 69 Ohio App.3d 79; cf., Lies v. Ohio Veterinary Medical Bd. (1981), 2 Ohio App.3d 204.
Appellant next argues that with regard to appellee's decision that appellant violated O.A.C. 4721-1-03(C)(1), the trial court improperly concluded appellee's decision was in accordance with law.
In making this argument, appellant contends the word "adequate" in describing medical record keeping in that subsection is strictly modified by the phrase "under the statute of limitations". Appellant thus asserts the subsection's meaning in 1994 related only to the length of time a record must be kept rather than the substantive information a medical record must reflect, as determined by appellee. This court disagrees with appellant's analysis.
In Pons, supra, at 623, the supreme court indicated that a medical board is "quite capable of interpreting technical requirements" imposed in its field. It follows that the board also is quite capable of determining the meaning of the administrative rules that apply.
This court notes that the words "under the statute of limitations" in the former version of O.A.C. 4721-1-03(C)(1) form a prepositional phrase; hence, they may be set apart from the words that precede them. Moreover, one of the definitions of the word "under", as listed in Webster's New World Dictionary (1990), is "subject to the control of".
Appellee in this case chose to consider that the words "adequate medical record keeping systems" in former O.A.C. 4721-1-03(C)(1) had a meaning distinct from the phrase that followed it. Appellee thus corrected its hearing officer by choosing to interpret the separate prepositional phrase as merely placing a limit on the length of time such "adequate" medical records must be maintained. The trial court recognized appellee is permitted to interpret its own professional requirements. Pons, supra, at the syllabus. Therefore, the trial court properly concluded appellee's decision on this charge was in accordance with law. See, eg., Arlen v. State (1980), 61 Ohio St.2d 168 at 172-173; Riegel v. Ohio Veterinary Med. Bd. (1995), 101 Ohio App.3d 148; In re Griffith (1991), 66 Ohio App.3d 658; Bingham v. Ohio Veterinary Medical Licensing Bd. (Feb. 11, 1998), Summit App. No. 18510, unreported; cf., Rajan v. State Med. Bd. of Ohio (1997), 118 Ohio App.3d 187. Hence, appellant's second argument also fails.
Finally, appellant argues the trial court abused its discretion in affirming appellee's decision; he contends the decision is not supported by reliable, probative and substantial evidence. This court cannot agree.
In this case, the members of appellee possessed "the specialized knowledge needed to determine the acceptable standard" of veterinary practice. Pons, supra, at 623. A review of the decision of appellee's members reveals the relevant facts adduced at the hearing were set forth to substantiate the conclusion that appellant's administration of drugs to Felix was careless and his treatment of Felix was "substandard".
Appellee's conclusion was based upon facts gleaned from appellant's own testimony. "With the facts of [appellant's] conduct before it", appellee "was competent" to determine "the question whether or not [his conduct] had been compatible with professional standards". Arlen v. State, supra, at 174. Appellee's references to Schoenberg's testimony concerning modalities of treatment served only to buttress appellee's conclusion that in his treatment of Felix from November 4 through November 10, 1994 appellant had not followed acceptable treatment protocols generally used in the profession.
The trial court in this case gave due deference to appellee's decision, supporting its order with a thorough review of the reliable, probative and substantial evidence presented by appellee at the hearing. On the facts of this case, therefore, this court cannot find the trial court abused its discretion in affirming appellee's decision and dismissing appellant's appeal. Pons, supra; In re Griffith, supra; Bingham v. Ohio Veterinary Medical Licensing Bd., supra; Ohio Veterinary Medical Bd. v. Singh (Apr. 20, 1994), Hamilton App. Nos. C-930062, A-9202713, unreported; Britton v. Ohio Veterinary Medical Bd. (Sept. 11, 1990), Ross App. No. 1581, unreported.
Accordingly, appellant's assignments of error are overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, P.J. and LEO M. SPELLACY, J. CONCUR.
 _______________________ KENNETH A. ROCCO, JUDGE
[1] Quotes are taken from either material contained in the record or testimony given at the administrative hearing.
[2] According to testimony adduced at the administrative hearing and Stedman's Medical Dictionary, this is an inflammation of the membrane surrounding the brain resulting from a disease caused by an intracellular parasite.
[3] This section was amended effective 1997; the quoted portions are the ones that applied in 1994 during appellant's treatment of Felix.
[4] The report was repetitive since it addressed separately the charges under the Ohio Revised Code and the Ohio Administrative Code.
[5] Appellant's brief filed in the trial court at page 9 contains the identical statements of law he now presents in his appellate brief to this court with respect to his first assignment of error. It thus appears appellant merely "re-cycled" them without regard to their applicability in this forum. Pons v. Ohio State Medical Board (1993), 66 Ohio St.3d 619.