OPINION
{¶ 1} Appellant, Michael Carmen Staschak, M.D. ("Dr. Staschak"), appeals from a judgment of the Franklin County Court of Common Pleas that affirmed an order of appellee, State Medical Board of Ohio ("board"), permanently denying Dr. Staschak's application for a certificate to practice medicine and surgery in Ohio. For the following reasons, we affirm.
 {¶ 2} On December 3, 2001, Dr. Staschak, who is a licensed physician and attorney in Pennsylvania, applied to the board for a certificate to practice medicine in Ohio. In his application, Dr. Staschak disclosed that the Pennsylvania State Board of Medicine ("Pennsylvania board") previously had brought two disciplinary actions against him.
 {¶ 3} On September 23, 2002, the matter of Dr. Staschak's application to practice medicine in Ohio was heard before a hearing examiner. On November 12, 2002, the hearing examiner issued a report and recommendation, wherein she concluded that the two disciplinary actions by the Pennsylvania board constituted a violation of R.C. 4731.22(B)(22) and Dr. Staschak failed to furnish satisfactory proof of good moral character. The hearing examiner therefore recommended a permanent denial of Dr. Staschak's application for a certificate to practice medicine.
 {¶ 4} Thereafter, Dr. Staschak objected to the hearing examiner's report and recommendation. In his objections, Dr. Staschak conceded the two Pennsylvania board orders constituted a violation of R.C. 4731.22(B); however, Dr. Staschak disputed the conclusion that he failed to furnish proof of good moral character.
 {¶ 5} On December 13, 2002, upon the recommendation of the hearing examiner, the board permanently denied Dr. Staschak's application for a certificate to practice medicine and surgery in Ohio.[1] Pursuant to R.C. 119.12, Dr. Staschak timely appealed from the board's order to the Franklin County Court of Common Pleas. The common pleas court affirmed the board's order. From the common pleas court's judgment, Dr. Staschak timely appeals.
 {¶ 6} Dr. Staschak asserts the following five assignments of error:
1. The Trial Court Judgment affirming the State Medical Board of Ohio Order was an abuse of discretion because the Ohio Board mischaracterized the findings in the Pennsylvania Board of Medicine Order underlying the Ohio Board Order thus leaving the Ohio Board Order unsupported by reliable, probative and substantial evidence.
2. The Trial Court Judgment affirming the Board Order was erroneous as a matter of law because there was no articulable standard of "good moral character" utilized by the Board in permanently denying Dr. Staschak's application for a license to practice medicine in Ohio based upon a finding that he failed to furnish proof of good moral character.
3. The Trial Court Judgment affirming the Board Order was erroneous as a matter of law because the Board violated Dr. Staschak's right to due process by failing to give him notice that the Board would consider permanently denying his application for a license to practice medicine in Ohio.
4. The Trial Court Judgment affirming the Board Order was erroneous as a matter of law because the Board violated Dr. Staschak's right to due process by allowing the Attorney Hearing Examiner it employed to assume the role of prosecutor in the administrative hearing she was hired to preside over.
5. The Trial Court Judgment affirming the Board Order was erroneous as a matter of law because the permanent denial of Dr. Staschak's application for Ohio licensure is too harsh a sanction and one that had no relationship to the two Pennsylvania Board Medicine Orders underlying the Ohio Board Order.
 {¶ 7} Pursuant to R.C. 119.12, when a common pleas court reviews an order of an administrative agency, the common pleas court must consider the entire record to determine whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. Univ. ofCincinnati v. Conrad (1980), 63 Ohio St.2d 108, 110-111; see, also, Andrews v. Bd. of Liquor Control (1955),164 Ohio St. 275, 280. The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court `must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'"Lies v. Ohio Veterinary Med. Bd. (1981), 2 Ohio App.3d 204,207, quoting Andrews, at 280. In its review, the common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but the findings of the agency are not conclusive. Conrad, at 111.
 {¶ 8} An appellate court's review of an administrative decision is more limited than that of a common pleas court. Ponsv. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, rehearing denied, 67 Ohio St.3d 1439. In Pons, the Supreme Court of Ohio stated:
* * * While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for those of the medical board or a trial court. Instead, the appellate court must affirm the trial court's judgment. * * *
Id. at 621.
 {¶ 9} An appellate court does, however, have plenary review of purely legal questions. Chirila v. Ohio State ChiropracticBd. (2001), 145 Ohio App.3d 589, 592, citing Steinfels v. OhioDept. of Commerce, Div. of Securities (1998),129 Ohio App.3d 800, 803, appeal not allowed (1999), 84 Ohio St.3d 1488.
 {¶ 10} Dr. Staschak's first assignment of error asserts the board mischaracterized the findings of the Pennsylvania board and, therefore, its order is not supported by reliable, probative, and substantial evidence. Therefore, Dr. Staschak asserts the common pleas court's judgment that affirmed the board's order was an abuse of discretion.
 {¶ 11} According to stipulated facts in a 1997 "Adjudication and Order" of the Pennsylvania board, for a period of approximately three years, Dr. Staschak gave ampules of Buprenex, a schedule V controlled substance, to his wife for her own use to treat an unspecified eye disorder. Additionally, Dr. Staschak failed to record and maintain records in a manner as required by regulations of the Pennsylvania board.
 {¶ 12} According to stipulated conclusions of law in the 1997 "Adjudication and Order," Dr. Staschak and the Commonwealth of Pennsylvania agreed that the factual stipulations constituted grounds for disciplinary sanction. Consequently, the Pennsylvania board suspended Dr. Staschak's medical license for 30 days, ordered Dr. Staschak not to prescribe or dispense any medications whatsoever to his wife, ordered Dr. Staschak to satisfactorily complete a 50-hour course in prescribing controlled substances, and ordered Dr. Staschak to pay a civil penalty of $7,500.
 {¶ 13} In a subsequent disciplinary matter, Dr. Staschak was charged with four separate counts that dealt with fraudulent submission of two sets of documents to the administrative tribunal. According to findings of fact in a 1999 "Adjudication and Order" of the Pennsylvania board, prior to the resolution of the 1997 disciplinary action against Dr. Staschak, Dr. Staschak was asked by his attorney to obtain an expert report and medical records for his wife. Rather than obtaining these items himself, Dr. Staschak delegated this task to his wife because his wife was being treated by a neuro-ophthalmologist.
 {¶ 14} After Dr. Staschak was given medical records and a purported expert report, he read these materials, believed these materials to be accurate, and forwarded the materials to his attorney. Dr. Staschak's attorney identified Careen Y. Lowder, M.D., as an expert witness and attached Dr. Lowder's purported expert report to a supplemental pre-hearing statement. Dr. Staschak's attorney also attached the purported medical records of Z.N. Zakov, M.D., to the supplemental pre-hearing statement.
 {¶ 15} However, Dr. Lowder's purported expert report contained misspellings, misstatements of fact, outrageous statements, and was, in fact, fraudulently prepared. Additionally, the content in the purported medical record of Dr. Zakov was suspect and fraudulently prepared. Dr. Staschak's attorney later withdrew the supplemental pre-hearing statement.[2]
 {¶ 16} In his conclusions of law, the Pennsylvania hearing examiner concluded that Dr. Staschak had engaged in unprofessional conduct by allowing and participating in the submission of fraudulent documents in the prior administrative hearing. Consequently, it was ordered that Dr. Staschak's license be "reprimanded and a $1,000 civil penalty [be] imposed" against him.
 {¶ 17} Dr. Staschak contends, however, that the Ohio hearing examiner in a memorandum to board members mischaracterized the findings of fact and conclusions of law of the Pennsylvania board's adjudications and, therefore, the board's order is not supported by reliable, probative, and substantial evidence. (See memorandum of Nov. 12, 2002, which was included with a copy of the transcript, exhibits, and the hearing examiner's report and recommendation.)
 {¶ 18} In this memorandum, the hearing examiner stated, in relevant part, as follows:
The following sections of the Disciplinary Guidelines were considered in drafting the Proposed Order in this matter. Please note, however, that the Disciplinary Guidelines do not limit any sanction that the Board may impose, and that the range of sanctions available in this matter extends from dismissal to permanent revocation.
I. E: Failing to keep patient records of substances prescribed, dispensed, or administered.
• The minimum penalty for section I.E is: Indefinite suspension, min. 60 days, with conditions for reinstatement; subsequent probation, min. 3 years.
• The maximum penalty for section I.E is: Permanent revocation of certificate or permanent denial of application.
III. D: Publishing a Fraudulent Statement.
• The minimum penalty for section III.D is: Stayed revocation; indefinite suspension, min. 1 year, with conditions for reinstatement; subsequent probation, min. 5 years.
• The maximum penalty for section III.D is: Permanent revocation of certificate or permanent denial of application.
 {¶ 19} Dr. Staschak contends that he did not fail to keep records pertaining to his wife; rather, he failed to record and maintain records in a manner as required by regulations of the Pennsylvania board. Therefore, Dr. Staschak argues the hearing examiner erred by referring to disciplinary guidelines pertaining to a failure to keep patient records. Furthermore, Dr. Staschak contends that he did not intend to mislead or deceive the Pennsylvania board when his attorney submitted the fraudulent documents. Therefore, Dr. Staschak argues the hearing examiner erred by referring to disciplinary guidelines pertaining to publishing a fraudulent statement.
 {¶ 20} According to the "Excerpt From The Draft Minutes of December 11, 2002," filed December 23, 2002, with the board, Dr. Somani "asked whether each member of the Board had received, read, and considered the hearing record, the proposed findings, conclusions, and orders, and any objections filed in the [matter] of: * * * Michael Carmen Staschak, M.D." A roll call was then taken and each board member affirmatively answered.
 {¶ 21} Dr. Somani also inquired "whether each member of the Board understands that the disciplinary guidelines do not limit any sanction to be imposed, and that the range of sanctions available in each matter runs from dismissal to permanent revocation." Another roll call was taken and each board member again affirmatively answered.[3]
 {¶ 22} Here, the board acknowledged that it read and considered the evidence put forth by Dr. Staschak and the state. Furthermore, the board clearly acknowledged that it understood that the disciplinary guidelines did not limit the sanction the board could impose. Under these facts and circumstances, we are not persuaded that the hearing examiner's memorandum concerning disciplinary guidelines rendered the board's disposition of Dr. Staschak's application to be based upon evidence that lacked reliability, probativeness, or substantiality. See, e.g., OurPlace, Inc. v. Ohio Liquor Control Comm. (1992),63 Ohio St.3d 570, 571 (defining reliable, probative, and substantial evidence).[4]
 {¶ 23} Furthermore, Dr. Staschak's contention that the hearing examiner and the board failed to give weight to Dr. Staschak's evidence of good moral character is unpersuasive. An affidavit that Dr. Staschak offered into evidence at the adjudication hearing, as well as his own testimony were before the hearing examiner and the board. Furthermore, at the board meeting of December 11, 2002, Dr. Staschak was given an opportunity to personally address the board. The board, however, did not find this evidence persuasive.
 {¶ 24} In Pons, supra, the Supreme Court of Ohio stated:
* * * [W]hen reviewing a medical board's order, courts must accord due deference to the board's interpretation of the technical and ethical requirements of its profession. The policy reason for this was noted in Arlen v. State (1980),61 Ohio St.2d 168, 173, 15 O.O.3d 190, 194, 399 N.E.2d 1251, 1254-1255: "`* * * The purpose of the General Assembly in providing for administrative hearings in particular fields was to facilitate such matters by placing the decision on facts with boards or commissions composed of [people] equipped with the necessary knowledge and experience pertaining to a particular field. * * *'" (Quoting Farrand v. State Med. Bd. [1949], 151 Ohio St. 222,224, 39 O.O. 41, 42, 85 N.E.2d 113, 114.)
Id. at 621-622.
 {¶ 25} Based upon our review of the evidence, we cannot conclude that the board abused its discretion in its interpretation of the ethical requirements of its profession. Therefore, we cannot conclude the common pleas court abused its discretion by affirming the board's order.
 {¶ 26} Accordingly, Dr. Staschak's first assignment of error is overruled.
 {¶ 27} Dr. Staschak's second assignment of error asserts the board erred, as a matter of law, when it found that he failed to furnish proof of good moral character because the board did not use an articulable standard of good moral character when it reached its decision. Dr. Staschak also asserts the common pleas court's affirmance of the board's order is erroneous.
 {¶ 28} Although R.C. Chapter 4731 does not define good moral character, we do not agree that the board did not use an articulable standard when it reached its decision. In State exrel. McAvoy v. Louisiana State Bd. of Med. Examiners (1959),238 La. 502, 115 So.2d 833, the Supreme Court of Louisiana observed:
The Legislature has not defined good moral character but this term is generally well understood by the courts, even though this term itself is unquestionably ambiguous and may be defined in many different ways. However, no great difficulty is encountered as to the true meaning of the term when applied to the professions of law or medicine. It has been said that the term may be broadly defined to include the elements of simple honesty, fairness, respect for the rights of others and for the laws of state and Nation. See Konigsberg v. State Bar of California,353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810. * * *
Id. at 516, fn. 2. See, also, Black's Law Dictionary (8 Ed.Rev. 2004) 714 (definition of "good moral character").[5]
 {¶ 29} Here, quoting a Pennsylvania board hearing examiner with approval, the Ohio hearing examiner found:
* * * Dr. Staschak's defense "defies logic for one so educated." Dr. Staschak is a medical doctor and licensed attorney in the Commonwealth of Pennsylvania. He has a Masters degree in administrative law, and he has represented individuals in licensing proceedings. As he admitted at hearing, he has seen many expert reports and medical records in his careers as a physician and an attorney. The argument that he failed to notice the glaring shortcomings in the fraudulent medical records and expert report is incomprehensible.
Moreover, it is equally incredible that, in his own defense before the Pennsylvania Board, Dr. Staschak relied on his wife to obtain expert reports and medical records despite his wife's many illnesses and extremely poor health. In fact, Dr. Staschak's testimony was completely incredible * * *.
(Report and Recommendation, filed Nov. 12, 2002, at 15.)
 {¶ 30} Because the hearing examiner concluded that Dr. Staschak's testimony lacked credibility and his failure to notice glaring shortcomings in fraudulent medical records was incomprehensible, we conclude the board could find that Dr. Staschak's character lacked the elements of "simple honesty" and "respect * * * for the laws of state and Nation," see McAvoy,
at 516, fn. 2; therefore, Dr. Staschak lacked good moral character. Consequently, Dr. Staschak's contention that the board failed to use an articulable standard when it reached its decision is not persuasive. Therefore, we cannot conclude the common pleas court abused its discretion by affirming the board's order.
 {¶ 31} Accordingly, Dr. Staschak's second assignment of error is overruled.
 {¶ 32} Dr. Staschak's third assignment of error asserts the board failed to provide him with adequate notice that it would consider permanently denying his application for a certificate to practice medicine in Ohio, thereby denying him due process.[6] Dr. Staschak therefore asserts the common pleas court's judgment that affirmed the board's order was in error.
 {¶ 33} Here, Dr. Staschak raised the issue of inadequate notice for the first time on appeal to the common pleas court. He did not raise the issue at the adjudicatory hearing and he did not raise the issue in his objections to the board.
 {¶ 34} In State ex rel. Quarto Mining Co. v. Foreman
(1997), 79 Ohio St.3d 78, 81, the Supreme Court of Ohio observed:
"Ordinarily, reviewing courts do not consider questions not presented to the court whose judgment is sought to be reversed." * * * Nor do appellate courts have to consider an error which the complaining party "could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." * * *
These rules are deeply embedded in a just regard for the fair administration of justice. They are designed to afford the opposing party a meaningful opportunity to respond to issues or errors that may affect or vitiate his or her cause. Thus, they do not permit a party to sit idly by until he or she loses on one ground only to avail himself or herself of another on appeal. In addition, they protect the role of the courts and the dignity of the proceedings before them by imposing upon counsel the duty to exercise diligence in his or her own cause and to aid the court rather than silently mislead it into the commission of error. * * *
 {¶ 35} Because Dr. Staschak failed to call the issue of inadequate notice to the attention of the hearing examiner at the adjudicatory hearing when such error could have been corrected and also failed to bring this error to the attention of the board, we therefore conclude Dr. Staschak waived this issue for purposes of appeal and the common pleas court did not abuse its discretion when it affirmed the board's order.
 {¶ 36} Accordingly, Dr. Staschak's third assignment of error is overruled.
 {¶ 37} Dr. Staschak's fourth assignment of error asserts that the attorney hearing examiner assumed the role of prosecutor, thereby denying Dr. Staschak due process; therefore he asserts the common pleas court erred by affirming the board's order.
 {¶ 38} Pursuant to R.C. 4731.23(A), the board has authority to designate an attorney, who meets criteria as specified within R.C. 4731.23(A), to serve as a hearing examiner to conduct any hearing that the board is empowered to hold pursuant to R.C. Chapter 119. According to former Ohio Adm. Code 4731-13-03(D)(3), the attorney hearing examiner had authority to examine witnesses and direct witnesses to testify. Therefore, pursuant to former Ohio Adm. Code 4731-13-03(D)(3), it was not improper for the hearing examiner to directly examine Dr. Staschak.
 {¶ 39} The issue thus resolves to whether, through her examination, the hearing examiner deprived Dr. Staschak of a fair and impartial hearing, thereby denying him due process. See, e.g., Chirila, supra, at 593, citing LTV Steel Co. v. Indus.Comm. (2000), 140 Ohio App.3d 680, 688 (stating that "[d]ue process rights guaranteed by the United States and Ohio Constitutions apply in administrative proceedings"); State exrel. Ormet Corp. v. Indus. Comm. (1990), 54 Ohio St.3d 102,103-104 (finding that a requirement to conduct a hearing implies a "fair hearing").
 {¶ 40} In St. Anthony Hosp. v. U.S. Dept. of Health HumanServ. (C.A. 10, 2002), 309 F.3d 680, 711, the court appositely observed:
"Due process entitles an individual in an administrative proceeding to a fair hearing before an impartial tribunal." * * *" However, a substantial showing of personal bias is required to disqualify a hearing officer or to obtain a ruling that the hearing is unfair." * * * In Liteky v. United States,
the Supreme Court observed that a presiding judge may, consistent with due process, be "exceedingly ill disposed towards [a party] who has been shown to be a thoroughly reprehensible person."510 U.S. 540, 550-51, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Such a judge is not recusable for bias or prejudice "since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task." Id. at 551, 114 S.Ct. 1147. On the other hand, the Liteky Court also observed that there may be circumstances in which unfair bias or prejudice may stem from knowledge gathered from the adjudication itself. "A favorable or unfavorable predisposition can also deserve to be characterized as `bias' or `prejudice' because, even though it springs from the facts adduced or the events occurring at trial, it is so extreme as to display clear inability to render fair judgment."Id. * * *
 {¶ 41} To support his claim, Dr. Staschak refers to the following examination of Dr. Staschak by the hearing officer:
HEARING EXAMINER MURPHY: I am having a bit of difficulty with the story and your credibility.
THE WITNESS: I am sorry.
HEARING EXAMINER MURPHY: I will tell you what my concerns are.
THE WITNESS: Okay.
HEARING EXAMINER MURPHY: You went through this with the Pennsylvania Board and told them that your wife was seeing a German doctor and the name you didn't know.
THE WITNESS: That's correct.
HEARING EXAMINER MURPHY: Now you are back here again and telling us that she saw a German doctor and the name you didn't know and still don't know.
THE WITNESS: That's correct, ma'am.
HEARING EXAMINER MURPHY: Have you asked your wife the name of this German doctor?
THE WITNESS: I asked his name and she said something like Schmidt, but I do not recall.
HEARING EXAMINER MURPHY: And you are telling us she saw the German doctor whose name you don't know somewhere in New York?
THE WITNESS: Yes, ma'am.
HEARING EXAMINER MURPHY: And you told the Pennsylvania Board that she saw this German doctor, that name you don't know, somewhere in California.
THE WITNESS: She saw —
HEARING EXAMINER MURPHY: Is that another German doctor whose name you don't know?
THE WITNESS: No. She was out in California and she did see doctors out there.
HEARING EXAMINER MURPHY: You told the Pennsylvania Board it was a German doctor whose name you don't know.
THE WITNESS: That may be right, yes. I don't know right now. I know she saw a German doctor on several occasions at different times.
HEARING EXAMINER MURPHY: In different states?
THE WITNESS: Yes. And I made that remark, from my recollection, may have went out of the country, down in Mexico one time to meet with a doctor.
HEARING EXAMINER MURPHY: Now you are telling different stories about the same thing, and rather —
MR. McGOVERN [Dr. Staschak's counsel]: I object to your characterizations that he is telling different stories. I mean, he told Mr. Wilcox that his wife saw this doctor in New York. The record reflects in California. He answered the question. I mean —
HEARING EXAMINER MURPHY: She may have seen him in both places?
MR. McGOVERN: Why don't you ask him to lead you through this. Ask his understanding of where this German doctor was.
HEARING EXAMINER MURPHY: You can ask those questions, Mr. McGovern, but your objection is on the record. You will have an opportunity to ask this witness questions.
MR. McGOVERN: Thank you.
HEARING EXAMINER MURPHY: I have made my point.
(Tr. 22-25.)
 {¶ 42} Here, although the hearing examiner perhaps could have been more restrained in some of her statements, we find the above-referenced portion of the transcript does not amount to the substantial showing of personal bias to render the hearing unfair. Neither do we find the above-referenced portion of the transcript supports a finding that the hearing examiner was not impartial. Therefore, we find the common pleas court did not abuse its discretion by affirming the board's order.
 {¶ 43} Accordingly, Dr. Staschak's fourth assignment of error is overruled.
 {¶ 44} Dr. Staschak's fifth assignment of error asserts the board's sanction was too harsh and had no relationship to the Pennsylvania board's orders; therefore he asserts the common pleas court erred by affirming the board's order.
 {¶ 45} R.C. 4731.29(A), in relevant part, provides:
* * * The board may, in its discretion, by an affirmative vote of not less than six of its members, issue its certificate to practice medicine and surgery * * * without requiring the applicant to submit to examination, provided the applicant submits evidence satisfactory to the board of meeting the same age, moral character, and educational requirements individuals must meet under sections 4731.08, 4731.09, 4731.091, and 4731.14
of the Revised Code * * *.
 {¶ 46} See, also, R.C. 4731.08 (providing, in relevant part, that "[t]he applicant shall furnish evidence satisfactory to the board that the applicant is * * * of good moral character"); former R.C. 4731.22(B)[7] (providing that the board may refuse to register an individual if another agency that is responsible for regulating the practice of medicine suspended an individual's license to practice).
 {¶ 47} Thus, pursuant to R.C. 4731.29(A), the board had authority to deny Dr. Staschak's application for a certificate to practice medicine if, based upon reliable, probative, and substantial evidence, it determined that he failed to submit satisfactory evidence of his good moral character. As discussed above in our disposition of Dr. Staschak's first assignment of error, we already have concluded that the board's determination that Dr. Staschak failed to furnish satisfactory evidence of good moral character was supported by reliable, probative, and substantial evidence.
 {¶ 48} Moreover, pursuant to former R.C. 4731.22(B), because the Pennsylvania board had previously suspended Dr. Staschak's license for 30 days and reprimanded Dr. Staschak's license, the board properly could have refused to register Dr. Staschak.[8]
 {¶ 49} Here, however, Dr. Staschak challenges the severity of the imposed penalty. In Henry's Cafe, Inc. v. Bd. of LiquorControl (1959), 170 Ohio St. 233, the Supreme Court of Ohio held:
2. On appeal from an order of an agency (as defined in Section119.01, Revised Code) to the Court of Common Pleas, the power of the court to modify such order is limited to the grounds set forth in Section 119.12 Revised Code, i.e., the absence of a finding that the order is supported by reliable, probative, and substantial evidence.
3. On such appeal, the Court of Common Pleas has no authority to modify a penalty that the agency was authorized to and did impose, on the ground that the agency abused its discretion.
Id. at paragraphs two and three of the syllabus.
 {¶ 50} In Lindner v. Ohio Liquor Control Comm. (May 31, 2001), Franklin App. No. 00AP-1430, we acknowledged how harsh the effects of Henry's Cafe can be. See, also, Aida Ent., Inc. v.Ohio State Liquor Control Comm., Franklin App. No. 01AP-1178, 2002-Ohio-2764, at ¶ 14, appeal not allowed, 96 Ohio St.3d 1533,2002-Ohio-5351; In Out Market, Inc. v. Ohio State LiquorControl Comm. (Sept. 18, 2001), Franklin App. No. 01AP-231;Goldfinger Ent., Inc. v. Ohio Liquor Control Comm., Franklin App. No. 01AP-1172, 2002-Ohio-2770, at ¶ 23, appeal not allowed,96 Ohio St.3d 1533, 2002-Ohio-5351. "However, this court is restricted by R.C. 119.12, which allows a reviewing court to `reverse, vacate, or modify the order or make such other ruling' only after finding that the order is not `supported by reliable, probative, and substantial evidence and is in accordance with law.'" Aida Ent., Inc., at ¶ 13. "[W]e have little or no ability to review a penalty even if it seems on the surface to be unreasonable or unduly harsh. * * * We, as an intermediate appellate court, are required to follow the syllabus of Henry'sCafé[.]" Linder, supra.
 {¶ 51} Therefore, having determined that the board had authority to deny Dr. Staschak's application for a certificate to practice medicine and surgery in Ohio and that the board's order was supported by reliable, probative, and substantial evidence, we conclude the common pleas court did not abuse its discretion by affirming the board's order.
 {¶ 52} Accordingly, Dr. Staschak's fifth assignment of error is overruled.
 {¶ 53} For the foregoing reasons, all five of Dr. Staschak's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bowman and Bryant, JJ., concur.
[1] The board's order is dated December 11, 2002; however, pursuant to the order, it became "effective immediately upon the mailing of notification of approval by the board." (See "Entry of Order," dated Dec. 11, 2002.) A certified copy of the order was mailed to Dr. Staschak on December 13, 2002.
[2] According to Dr. Staschak, his attorney also withdrew from the case when the fraudulent nature of the documents came to light. (Tr. 26, 54.) Dr. Staschak then retained another attorney. (Tr. 54.) According to Dr. Staschak, this subsequent attorney was later disbarred following Dr. Staschak's second disciplinary hearing; however, according to Dr. Staschak, this subsequent attorney's disbarment was not related to the attorney's representation of Dr. Staschak. (Tr. 54-55.) See, also, 1999 "Adjudication and Order" of the Pennsylvania board (observing that Dr. Staschak's subsequent counsel was disbarred on June 15, 1999).
[3] According to the excerpt of the minutes of the meeting of December 11, 2002, Dr. Somani also noted that "in accordance with the provisions in Section 4731.22(F)(2), Revised Code, specifying that no member of the Board who supervises the investigation of a case shall participate in further adjudication of the case, the Secretary and Supervising Member must abstain from further participation in the adjudication of these matters." Additionally, absent objection, at the meeting a reading of the proposed findings of fact, conclusions and orders concerning matters before the board were not read into the record.
[4] In Our Place, Inc., the Supreme Court of Ohio observed: "The evidence required by R.C. 119.12 can be defined as follows: (1) `Reliable' evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) `Probative' evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) `Substantial' evidence is evidence with some weight; it must have importance and value." Id. at 571. (Footnotes omitted.)
[5] Black's Law Dictionary defines "good moral character" as, inter alia: "1. A pattern of behavior that is consistent with the community's current ethical standards and that shows an absence of deceit or morally reprehensible conduct. * * * 2. A pattern of behavior conforming to a profession's ethical standards and showing an absence of moral turpitude." Id. at 714. See, also, id. at 1030-1031 (defining "moral turpitude," as, inter alia: "1. Conduct that is contrary to justice, honesty, or morality").
[6] See Mullane v. Cent. Hanover Bank Trust Co. (1950),339 U.S. 306, 314, 70 S.Ct. 652 (providing that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. * * * The notice must be of such nature as reasonably to convey the required information * * * and it must afford a reasonable time for those interested to make their appearance"). See, also, Bouquett v. Ohio State Med. Bd.
(1997), 123 Ohio App.3d 466, 474-475, dismissed, appeal not allowed (1998), 81 Ohio St.3d 1415 (stating that "[w]here a physician is fully apprised of the violations being considered by the board and is given a full opportunity to respond before an impartial board, due process has been satisfied").
[7] Pursuant to former R.C. 4731.22(B):
"The board, by an affirmative vote of not fewer than six members, shall, to the extent permitted by law, limit, revoke, or suspend an individual's certificate to practice, refuse to register an individual, refuse to reinstate a certificate, or reprimand or place on probation the holder of a certificate for one or more of the following reasons:
"* * *
"(22) Any of the following actions taken by the agency responsible for regulating the practice of medicine and surgery, osteopathic medicine and surgery, podiatric medicine and surgery, or the limited branches of medicine in another jurisdiction, for any reason other than the nonpayment of fees: the limitation, revocation, or suspension of an individual's license to practice; acceptance of an individual's license surrender; denial of a license; refusal to renew or reinstate a license; imposition of probation; or issuance of an order of censure or other reprimand[.]"
[8] In this appeal, Dr. Staschak concedes the orders of the Pennsylvania board constitute a violation of former R.C.4731.22(B)(22). (See Appellant's Brief, at 3.)