OPINION
{¶ 1} Appellant, Azber Azher Ansar, M.D., pled guilty to a misdemeanor charge of filing a false police report. The State Medical Board of Ohio ("Board") suspended his medical license on the grounds that his conviction was a misdemeanor involving moral turpitude as set forth in R.C. 4731.22(B)(13). The primary issue on appeal is whether Dr. Ansar's conviction is a crime involving moral turpitude.
 {¶ 2} The following facts are not in dispute. Dr. Ansar is a staff physician at the Veterans Affairs Medical Center in Minneapolis, Minnesota. Dr. Ansar was licensed to *Page 2 
practice medicine in Ohio in October 2000. He is also licensed to practice medicine in Arizona, Illinois, Indiana, Iowa, Michigan, Minnesota, Missouri, Nevada, New Mexico, North Dakota, Utah, Washington, Wisconsin, and the Commonwealth of the Northern Mariana Islands. Dr. Ansar is board certified in internal medicine.
 {¶ 3} In the summer of 2005, Dr. Ansar was in the midst of a bitter divorce and custody battle. He became upset about a police report that his wife had filed against him. Dr. Ansar admitted to the Board that in an attempt to gain a legal advantage in the divorce, he drove to a store with his child, purchased a knife, and then drove to his parents' home, where he was living at the time. He placed the knife in his pocket, and while he was transferring his four-year-old son into the car seat of his wife's car, appellant cut himself with the knife and tossed the knife into his wife's car. Appellant then called police and made a false report that he had been attacked by his wife. Appellant recanted his statement when he realized the officers were going to handcuff his wife and take her into custody.
 {¶ 4} The Board conducted a hearing in which Dr. Ansar appeared pro se. The hearing examiner found that Dr. Ansar had committed a misdemeanor involving moral turpitude and recommended a one-year suspension of Dr. Ansar's license. Dr. Ansar appeared before the board and addressed them personally. After discussion and deliberation, the board voted to impose a six-month suspension.
 {¶ 5} Dr. Ansar appealed the decision of the Board to the Franklin County Court of Common Pleas. On December 7, 2007, the court of common pleas affirmed the order of the Board, suspending for six months Dr. Ansar's certificate to practice medicine and surgery in Ohio. *Page 3 
 {¶ 6} On appeal, Dr. Ansar has asserted the following assignments of error:
 1. The trial court abused its discretion and erred to appellant's prejudice when it found the order of the State Medical Board of Ohio to be in accordance with law.
 2. The order of the State Medical Board of Ohio which was affirmed by the trial court is not supported by "reliable, probative and substantial" evidence.
 3. Appellant's misdemeanor conviction did not meet the definition of a "Misdemeanor involving moral turpitude" in accordance with Ohio Revised Code 4731.22(B)(13) and was not supported by case law. The Trial court did not take into consideration all the circumstances revolving around Appellant's misdemeanor conviction and erroneously labeled it a "Misdemeanor involving Moral Turpitude." The concept of a crime of moral turpitude not related to the practice of medicine, is a concept that is not confided exclusively, or even primarily to the professional judgment of the State Medical Board of Ohio.
 4. There has been a harmful prejudicial error against Appellant by Appellee. The excerpts from the draft minutes of January 10th, 2007 meeting of the State Medical Board of Ohio were intentionally doctored to exclude the fact that a board member was under the impression that Appellant had stabbed his son in front of his mother and this preconceived notion prejudiced the members of the State Medical Board of Ohio against Appellant.
 5. The order of the State Medical Board that was affirmed by the trial court was "Arbitrary and Capricious", unlawful, unreasonable and against the manifest weight of the evidence.
 6. The conclusions of law are not supported by the findings of fact and the findings of fact are not supported by any evidence wherein reasonable minds could reach the factual finding from the evidence.
 {¶ 7} In his first assignment of error, Dr. Ansar urges this court to conduct an independent review of the reasoning of the Board and the court of common pleas. *Page 4 
 {¶ 8} We reject this request because our standard of review is more limited than that of the common pleas court. This is not to say that we do not review the record. However, our task on appeal is to determine if the common pleas court abused its discretion in finding that the decision of the Board was supported by reliable, probative, and substantial evidence and in accordance with law. Bivins v. Ohio StateBd. of Emergency Med. Servs., 165 Ohio App.3d 390, 2005-Ohio-5999, at ¶ 7. In Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, the Supreme Court of Ohio stated:
 * * * While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for those of the medical board or a trial court. * * *
Id. at 621.
 {¶ 9} Our review of whether the Board's order is in accordance with law is plenary. Staschak v. State Med. Bd. of Ohio, Franklin App. No. 03AP-799, 2004-Ohio-4650. Applying this standard of review, we turn now to Dr. Ansar's substantive arguments.
 {¶ 10} Dr. Ansar asserts in his brief that the Board and the court of common pleas abused their discretion for the following reasons: (1) relevant factors were not considered; (2) improper factors were given significant weight; (3) the medical board engaged in an arbitrary and unreasonable exercise of power; and (4) the action of the medical board was unreasonable. *Page 5 
 {¶ 11} Dr. Ansar does not direct us to the pages in the record where the alleged error occurred. App. R. 16(A)(7) requires appellant, in his brief, to provide "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record upon which appellantrelies." (Emphasis added.) In addition, App. R. 12(A)(2) allows a reviewing court to "disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based."
 {¶ 12} It is not an appellate court's obligation to search the record for evidence to support an alleged error and, for that reason, the first assignment of error is overruled. Nevertheless, some of the issues raised in the first assignment of error will be addressed in later assignments of error.
 {¶ 13} In his second assignment of error, Dr. Ansar argues that the order of the Board was not supported by reliable, probative, and substantial evidence. Specifically, Dr. Ansar objects to the admission of a police report on the grounds that the report was not certified and constituted hearsay. The hearsay rule is relaxed in administrative hearings. Hayes v. State Med. Bd. of Ohio (2000), 138 Ohio App.3d 762,769. Moreover, even if the evidence should not have been admitted, the asserted error is not prejudicial. The certified copy of his conviction was admitted without objection, and that document was reliable, probative, and substantial evidence that he was convicted of the crime of falsely reporting a crime pursuant to Minn. Stat. 609.505.
 {¶ 14} Dr. Ansar argues that he should have been apprised of his Miranda rights prior to his recanting of his false statement. This argument is without merit as Dr. Ansar *Page 6 
waived this argument when he pled guilty to the charge. He never raised the issue at the hearing and, therefore, has waived this issue on appeal.
 {¶ 15} Dr. Ansar also argues that it was prejudicial error for the hearing examiner to refuse to admit letters from medical boards in various states who had taken no action against Dr. Ansar as a result of the same incident for which Ohio sought to suspend his license. The letters were not admitted because they were not relevant to the Ohio proceeding, but Dr. Ansar was permitted to testify about the actions other states took.
 {¶ 16} For all of these reasons, the second assignment of error is overruled.
 {¶ 17} In his third assignment of error, Dr. Ansar contends that the crime for which he was convicted was not a misdemeanor involving moral turpitude as that term is used in R.C. 4731.22(B)(13).
 {¶ 18} R.C. 4731.22(B)(13) gives the Board the authority to discipline a physician for, among other things, "[a] plea of guilty to, a judicial finding of guilt of, or a judicial finding of eligibility for intervention in lieu of conviction for, a misdemeanor involving moral turpitude."
 {¶ 19} Dr. Ansar was convicted in Minnesota of violating Minn. Stat.609.505, which provides, in pertinent part:
 Whoever informs a law enforcement officer that a crime has been committed or otherwise provides information to an on-duty peace officer, knowing that the person is a peace officer, regarding the conduct of others, knowing that it is false and intending that the officer shall act in reliance upon it, is guilty of a misdemeanor. * * *
 {¶ 20} The equivalent Ohio statute would be R.C. 2921.13(A)(2) and (3), the misdemeanor offense of falsification. That statute provides, in pertinent part: *Page 7 
 No person shall knowingly make a false statement * * * when any of the following applies:
 * * *
 (2) The statement is made with purpose to incriminate another.
 (3) The statement is made with purpose to mislead a public official in performing the public official's function.
 * * *
 (F)(1) Whoever violates division (A)(1), (2), (3), * * * of this section is guilty of falsification, a misdemeanor of the first degree.
 {¶ 21} In a case involving the Board, this court has defined "moral turpitude" as follows:
 Acts of moral turpitude, although not subject to exact definition, are characterized by "baseness, vileness, or the depravity in private and social duties which man owes to his fellow man, or to society in general * * *." This court has before found that moral turpitude is generally defined as an "[a]ct or behavior that gravely violates moral sentiment or accepted moral standards of [the] community and is a morally culpable quality held to be present in some criminal offenses as distinguished from others."
Rossiter v. Ohio State Medical Bd., Franklin App. No. 01AP-1252, 2002-Ohio-2017 (internal quotes and ellipses omitted). ("RossiterI.")
 {¶ 22} A review of cases involving moral turpitude indicates that, while Dr. Ansar's conviction is not among the most serious misdemeanors involving moral turpitude, it falls within the range of such cases.
 {¶ 23} In Jaros v. The Ohio State Bd. of Emergency Med. Servs., Lucas App. No. L-01-1422, 2002-Ohio-2363, an emergency medical technician pleaded guilty to a third *Page 8 
degree misdemeanor of sexual imposition stemming from improper touching of his girlfriend's 17-year-old sister. The court held that it was undisputed that the appellant's crime was one involving moral turpitude.
 {¶ 24} Staschak, supra, was a licensing case in which the board found the physician lacked good moral character, and found that his testimony lacked credibility in connection with him giving Schedule V drug samples to his wife, and submitting fraudulent documents to the medical board. The Board permanently denied his application to practice medicine in Ohio. This court affirmed, quoting Black's Law Dictionary definition of "good moral character," as a pattern of behavior conforming to a profession's ethical standards and showing an absence of moral turpitude, moral turpitude being conduct that is contrary to justice, honesty, or morality.
 {¶ 25} In Holycross v. State Bd. of Emergency Med. Serv.,163 Ohio App.3d 213, 2005-Ohio-4598, the appellant became enamored of his co-worker's 15-year-old daughter. He entered the house and hugged and kissed her on the cheek after his co-worker had told him to end all contact with his daughter. He also attempted to email her after he had been told to cease contact. The Board revoked the emergency medical technician's license after he pleaded guilty to telephone harassment, R.C. 2917.21(A)(1), a first degree misdemeanor, attempted telecommunications harassment, R.C. 2923.02, a second degree misdemeanor, and criminal trespass, R.C. 2911.21(A)(4), a fourth degree misdemeanor. The Second District Court of Appeals held that these crimes did not constitute crimes of moral turpitude, stating "[w]e are not prepared to hold that persisting in giving one's attention to a 15-year-old girl, in the face of her father's express, and *Page 9 
strongly voiced, disapproval is base, vile, or depraved, wrong though it may be." Holycross, at ¶ 74.
 {¶ 26} In contrast, this court upheld revocation of a physician's license to practice medicine when he pleaded guilty and was convicted of four counts of contributing to unruliness or delinquency of a child, misdemeanors of the first degree. In re Heath (1992),80 Ohio App.3d 605. The underlying factual basis for the charges involved furnishing alcohol to minors and engaging in sexual activity with minor boys. The Board found that, under these circumstances, the charges constituted a misdemeanor involving moral turpitude.
 {¶ 27} More relevant to the current case is Davidson v. State MedicalBd. of Ohio (May 7, 1998), Franklin App. No. 97APE08-1036, in which a podiatrist pleaded no contest to a second degree misdemeanor count of obstructing official business in violation of R.C. 2921.31, stemming from his removal of patient billing sheets from patient medical records in a Medicaid insurance fraud investigation. This court found no abuse of discretion in finding that this misdemeanor involved moral turpitude. In particular, the court focused on the fraudulent nature of the act.
 {¶ 28} In Hayes, a podiatrist's license was revoked because of lies and omissions in his bar application proceedings. The Board found his conduct amounted to falsification in violation of R.C. 2921.13, a misdemeanor involving moral turpitude. As noted above, R.C. 2921.13 is the Ohio equivalent of the misdemeanor appellant was convicted of in Minnesota. Factually, the cases are distinguishable because, in theHayes case, the podiatrist repeatedly lied under oath, lied to each group reviewing him, lied in depositions, purposely omitted information in his bar application regarding his past conduct, *Page 10 
properties, debts, employees, and podiatry practice. The appellant told the Board of Commissioner's hearing panel that he felt that he had no obligation to answer truthfully.
 {¶ 29} Rossiter I involved a physician who was convicted, among other things, of a misdemeanor count of failing to file one quarterly tax withholding form. This court reversed the Board's decision that this misdemeanor involved moral turpitude. The case was remanded for reconsideration of the penalty. On remand, Rossiter v. State Medical Bd.of Ohio, 155 Ohio App.3d 689 (Rossiter II), the Board imposed the same penalty due to other convictions related to tax matters and this court affirmed.
 {¶ 30} In Rossiter I, this court noted that "[p]roof of a criminal conviction is generally not conclusive of the issue of moral turpitude, which requires consideration of all the circumstances surrounding the illegal conduct." Rather, where moral turpitude is disputed, an independent review of the circumstances underlying criminal convictions is necessary to determine if they manifest the requisite lack of social conscience and depravity beyond any established criminal intent." Id. See, also, Disciplinary Counsel v. Hunter, 106 Ohio St.3d 418,2005-Ohio-5411, at ¶ 24.
 {¶ 31} Therefore, it was incumbent upon the Board to look beyond the elements of the crime of false reporting, and to examine the circumstances surrounding the incident. It is the function of the Board, not the court of appeals, to conduct such a review.
 {¶ 32} Attorney discipline cases are also instructive on the issue of falsification involving moral turpitude. Former DR I-102(A)(3) provides in pertinent part that "[a] lawyer shall not: engage in illegal conduct involving moral turpitude. "[1] *Page 11 
 {¶ 33} For example, in Columbus Bar Assn. v. Stubs,109 Ohio St.3d 446, 2006-Ohio-2818, an attorney falsified a document purporting to show that she had been properly insured at the time of a minor traffic accident. She pled guilty to a charge of falsification, and the Supreme Court of Ohio found that her illegal conduct involved moral turpitude.
 {¶ 34} In Columbus Bar Assn. v. Neal, 113 Ohio St.3d 461,2007-Ohio-2341, an attorney staged a series of burglaries at his residence and submitted false insurance claims. He was charged with, among other things, two counts of falsification. The Supreme Court of Ohio found that he had engaged in illegal conduct involving moral turpitude.
 {¶ 35} In Disciplinary Counsel v. McDowell, 71 Ohio St.3d 22,1994-Ohio-232, an attorney knowingly misrepresented his client's actual residence in another county. He pled guilty to falsification, and the Supreme Court of Ohio found that his misconduct involved moral turpitude.
 {¶ 36} These cases illustrate the principle that a misdemeanor conviction for falsification can be considered illegal conduct involving moral turpitude.
 {¶ 37} Here, the Board examined and discussed the particular circumstances of this case. Specifically, the act took place in front of Dr. Ansar's four-year-old son, and there was evidence of premeditation because Dr. Ansar purchased the knife the day of the incident and put it in his pocket while he awaited his wife's arrival. The incident was staged and involved dishonesty, and the intent was to set his wife up to gain an edge in *Page 12 
the divorce proceedings. This constitutes reliable, substantial, and probative evidence that Dr. Ansar's misdemeanor conviction involved moral turpitude.
 {¶ 38} Dr. Ansar points to the fact that he recanted almost immediately and that he complied with all terms of his probation. However, these mitigating factors weigh more heavily toward the severity of the sanction rather than proof of moral turpitude.
 {¶ 39} In his brief, Dr. Ansar quotes portions of the hearing before the Board that he alleges are prejudicial or display a lack of understanding about the circumstances surrounding his case. While Dr. Ansar disagrees with the Board's conclusion, the extensive quotes cited only reinforce the notion that the Board took the issue seriously and engaged in a reasoned discussion before voting on a sanction.
 {¶ 40} Dr. Ansar further argues that his due process rights were violated because the hearing officer was not a neutral and impartial decision maker. As discussed above, appellant was not prejudiced by not having letters from other jurisdictions admitted. Appellant also seeks to challenge his own exhibit that the hearing examiner used in his report and recommendation. Finally, appellant alleges the hearing examiner was biased because he is an employee of the Board.
 {¶ 41} The latter argument was not raised before the court of common pleas, and therefore cannot be raised for the first time in this appeal. Appellant's other arguments do not and cannot alter his own admission that he pled guilty to and was found guilty of the misdemeanor of filing a false police report in Minnesota. Appellant admitted to the Board that he purchased and concealed a knife, he stabbed or cut himself in the presence of his young child, tossed the knife into his wife's car, and then called police and falsely reported that he had been stabbed by his wife. Based on our review of the record and case law *Page 13 
concerning misdemeanors involving moral turpitude, we see no abuse of discretion in the common pleas court's conclusion that Dr. Ansar's conduct violated moral sentiment and the accepted moral standards of the community, thereby potentially eroding the public's esteem for him. The third assignment of error is overruled.
 {¶ 42} In his fourth assignment of error, Dr. Ansar contends that the draft minutes of the Board's meeting were intentionally doctored. Dr. Ansar believes that a Board member was under the impression that Dr. Ansar had stabbed his son in the presence of his mother, and not that Dr. Ansar had stabbed himself in the presence of his son and wife.
 {¶ 43} A review of the transcript demonstrates that a Board member made an unintentional slip of the tongue and then immediately corrected himself. There is absolutely no evidence that the record was intentionally altered. The fourth assignment of error is overruled.
 {¶ 44} In his fifth assignment of error, Dr. Ansar claims the Board was not able to comprehend the distinction between a misdemeanor and a misdemeanor involving moral turpitude. As discussed in connection with the third assignment of error, although Dr. Ansar may disagree with the conclusions of the Board, its decision was not arbitrary, capricious, unlawful, or unreasonable. Nor was it against the manifest weight of the evidence. The fifth assignment of error is overruled.
 {¶ 45} In his sixth assignment of error, Dr. Ansar summarizes and repeats arguments previously made and dealt with. The sixth assignment of error is overruled. *Page 14 
 {¶ 46} Based on the foregoing, appellant's six assignments of error are overruled, and the decision and entry of the Franklin County Court of Common Pleas affirming the order of the State Medical Board of Ohio is affirmed.
Judgment affirmed.
BRYANT and FRENCH, JJ., concur.
[1] The Ohio Code of Professional Responsibility was superseded effective February 1, 2007 by the Ohio Rules of Professional Conduct. *Page 1